Robert DEMEULENAERE, Marcel Demeulenaere, Jeanne Demeulenaere, Irma Demeulenaere, Irene Demeulenaere, Paul Demeulenaere, Alfred Demeulenaere, and Universal Cash Register Corporation, Plaintiffs,

Universal Machines, Inc., C. E. Schroeder and Marcel Anthony D'Ochaine, Intervenor-Plaintiffs,

Raymond Flasselaertre, Andre Mattyssens and Auguste Lambiotte, Additional Intervenor-Plaintiffs,

v.

ROCKWELL MANUFACTURING COMPANY, Ohmer Corporation, the National Cash Register Company and John O. Ekblom, Defendants.

United States District Court
S. D. New York.
Nov. 9, 1960.

See also 23 F.R.D. 689.

Gilbert J. Fortgang, New York City, for plaintiffs.

Fulton, Walter & Halley, New York City, for intervenor-plaintiffs; William Sherman, New York City, of counsel.

Littauer & Ullman, New York City, for additional intervenor-plaintiffs; Nathan Tanen, New York City, of counsel.

Cahill, Gordon, Reindel & Ohl, New York City, for defendants Rockwell Mfgr. Co., Ohmer Corp. and John O. Ekblom, Mathias F. Correa, Alice Gilbert, New York City, of counsel.

Shearman & Sterling & Wright, New York City, for defendant National Cash Register Co.; Robert L. Clare, Jr., George W. Foley, New York City, of counsel.

CASHIN, District Judge.

Defendant, The National Cash Register Company, moves under Rule 41(b) of the Federal Rules of Civil Procedure for an order dismissing the above entitled action for want of prosecution in accordance with a 180 day order of this court, dated June 24, 1957, and extensions of the same. This motion was made on March 17, 1959 and in an order dated April 27, 1959 I reserved decision on it.

Plaintiffs seek to recover treble damages amounting to $75,000,000 for an alleged conspiracy by defendants to destroy plaintiffs' cash register business. Pursuant to said conspiracy defendant, Rockwell Manufacturing Company, is charged with breaching a contract with plaintiffs to exploit certain machines. One of defendant's principal defenses is that the machines were not commercially feasible and hence there was no breach of contract. Upon the termination of the contract certain machines were returned to the plaintiffs by defendant and were either damaged in transit or were altered by the plaintiffs. On April 8, 1953 Judge Knox ordered that—

> "* * * plaintiffs shall restore the aforesaid devices, machines and models to the condition they were in while in the possession of defendant Rockwell Manufacturing Company. Said restoration will be done under the observation of defendants and defendants shall have the right to observe all changes, modifications, repairs or any other work done upon said devices, machines and models."

In signing the order Judge Knox struck out the words "in so far as may be practicable."

Since this order was signed, the action has had a long and spotty career. It has been dormant at times and at others it has been fairly active. Begun in 1952 this action has been on the assignment calendar twice and was finally stricken from it in April 1956. It has also been on the dismissal calendar four times but on each occasion plaintiffs secured an extension of time to file a note of issue on one excuse or another. In June 1957 I entered a 180 day order. In January 1958 I refused to dismiss the action and extended the 180 day order for an additional 60 days. At that time I stated that—

> "While I do not feel that a peremptory order is warranted since unforeseen circumstances might intervene which would make necessary the vacating of such an order, the long history of delay in bringing the action to trial does warrant the admonition that any request for a further extension of time could not but be looked upon by the Court with extreme disfavor."

Although it is the policy of this court to expedite the speedy trial of actions, I felt that to dismiss the action with prejudice for failure to prosecute with

due diligence in January 1958 was too drastic a remedy at that time. As I said then—

"A litigant should not be denied his day in court unless it is abundantly clear that whatever delay has been encountered warrants the rather drastic remedy of a dismissal with prejudice."

The delays at that time were caused partly by the illness of plaintiffs' attorney, the carrying on of unsuccessful settlement negotiations, and the substitution of attorneys by plaintiffs. Since January 1958, when I extended the 180 day order for an additional 60 days, plaintiffs received a further 90 day extension which expired in July 1958.

In the meantime, Judge Knox's order of 1953 had not been complied with and the parties could not agree as to the proper procedure to be utilized in the restoration of the machines. On February 13, 1958 I directed that plaintiffs begin the repairs with the restoration of the machines designated as A–1 and C–2. Because it was represented that Marcel Demeulenaere, one of the plaintiffs herein, was the only one capable of fixing the machines and he was working on priority government projects in Washington, it was ordered that the repair sessions proceed on weekends only. Only two repair sessions were held from February 13, 1958 to April 27, 1959 allegedly because Marcel Demeulenaere was ill. On April 27, 1959 a new Special Master was appointed by the court and it was ordered that work on the machines be done day by day. On March 17, 1959 the defendant, The National Cash Register Company, made the instant motion to dismiss for want of prosecution in accordance with the 180 day order dated June 24, 1957, and extensions of the same. At that time I stated that I would hold the motion under consideration until I saw how plaintiffs obeyed the order to repair the machines day by day.

The report of the Special Master filed on July 22, 1960 shows that "the repair sessions began on May 7, 1959 and continued daily, with minor interruptions, until August 18, 1959, at which time the A–1 machine was functioning and operational. Other than a study of drawings and plans and an inspection of disassembled parts, no actual work was performed on any other machine involved in this case. Additional sessions took place subsequent to August 18, 1959, which were devoted to minor adjustments, cataloging missing drawings and parts, a general inspection of all machines involved and procedural problems." The only plaintiff who attended these sessions was Robert Demeulenaere, with the exception of the one session held on May 12, 1959 when his brother Marcel Demeulenaere attended.

The Special Master went on to say that "to some extent, the work performed by Robert was a compliance with the orders of the Court. The pace he set for himself was a slow one. Although he displayed a knowledge of mechanical theory, he is not a mechanic. On many occasions the technical personnel representing the defendants helped him with basic repairs such as the motor, etc., in order to expedite his work on the machine itself. He frequently interrupted his work to make tea and to telephone."

On January 18, 1960 an order was made substituting attorneys for plaintiffs and this was affirmed by the Court of Appeals (2 Cir.) on March 9, 1960. On April 20, 1960 plaintiffs' new attorney submitted a "Statement of Plaintiffs' Position" to the Special Master in which plaintiffs claim that they have complied with the orders of this court and that it is impossible to repair the C–2 machine. Moreover, it is now plaintiffs' position that they knew it was impossible to fix the C–2 machine since February 21 and 22, 1958 when Marcel Demeulenaere dismanteled the C–2 machine completely except for the frames. Thus, plaintiffs hid this knowledge from the court and defendants for 26 months. Plaintiffs attempt to excuse this decep-

tion by saying that the fault was that of their former counsel and his inability to handle and cope with this action. Their position is that although they "had told him [former counsel] on innumerable occasions that it was impossible for them to restore the C–2 machine, he kept on insisting that they were obliged and required under the orders to restore it. His approach was that it was essential to bring to the Court and Jury the operating machine."

Plaintiffs, however, were not innocent bystanders. They permitted their lawyer to deceive the court and, in fact, they aided him. The plaintiffs were present at many arguments before this court in which they never mentioned that it was impossible to fix the machine. Moreover, they furnished their attorney with letters stating that they needed adjournments because of the illness of Marcel Demeulenaere. There was no need for these adjournments since it now appears, and was known to plaintiffs at that time, that it was impossible to fix the C–2 machine.

■■ I am fully aware of the seriousness of dismissing this action with prejudice for lack of prosecution. It would deny plaintiffs their day in court and this is not desirable. As Chief Judge Clark stated in Gill v. Stolow, 240 F.2d 669, 670 (2 Cir., 1957)—

"* * * In final analysis, a court has the responsibility to do justice between man and man; and general principles cannot justify denial of a party's fair day in court except upon a serious showing of willful default."

Even though that case involved a dismissal under Rule 37(d) of the Federal Rules of Civil Procedure and did not involve Rule 41(b), Chief Judge Clark's warning that a court should not dismiss an action with prejudice except on very substantial evidence, should not be taken lightly. However, if there ever was a case that deserved to be dismissed for lack of prosecution this is it. I am not dismissing this action solely because plaintiffs concealed the true status of the C–2 machine for 26 months. That was merely the final straw. Plaintiffs have been courting dismissal for several years. Judge Knox's order, entered in April 1953, still has not been complied with. In January 1958 I warned the plaintiffs that any further delay would be looked upon with extreme disfavor. Since then plaintiffs have wasted two years by deceiving this court.

I find that plaintiffs have not proceeded with due diligence to prosecute their claim. There have been periods when nothing at all was done. Other times plaintiffs have been spurred into action by defendants' motions. I find that plaintiffs have disregarded the orders and admonitions of this court.

Defendant's motion to dismiss with prejudice is granted.

It is so ordered.