**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

Jessie BRIGGS and Mary Louise Weichel, Defendants.

No. C 64–597.

United States District Court
N. D. Ohio, E. D.

Oct. 19, 1964.

John W. Vogel, Chicago, Ill., Orazio Sipari, Cleveland, Ohio, Thomas B. Hart, Chicago, Ill., for Securities and Exchange Commission.

Douglas F. Schofield, Cleveland, Ohio, for defendant Jessie Briggs.

James J. Carroll, James J. Stanard, Cleveland, Ohio, for defendant Mary Louise Weichel.

CONNELL, Chief Judge.

On September 8, 1964 Securities and Exchange Commission filed its complaint for injunctive relief, charging the defendants with violations of the registration and anti-fraud provisions of the Securities Act of 1933, 15 U.S.C. §§ 77e and 77q, and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j and 78o. The complaint alleges that the defendants transacted business within this district and participated within this district in the transactions of which the government complains, namely, the fraudulent offer and sale of unregistered securities.

On the filing of the complaint a temporary restraining order was granted, and an order was entered pursuant to Rule 4(i) of the Federal Rules of Civil Procedure providing for service upon the defendant Briggs by any one or more of four methods: Service by registered mail, personal service by the sheriff of Vancouver County, British Columbia or any of his designated agents, service by said sheriff in accordance with the local rules of British Columbia, or service upon her by the United States Marshal. Pursuant to that order the defendant Briggs was served by registered mail on September 10, 1964. (Cf. Affidavit of Harry M. Jones) On September 17, 1964 the defendant Briggs was personally served by a Deputy Sheriff of British Columbia, Canada. (Cf. Affidavit of Alfred J. Tuttle) On September 18, 1964 counsel for the defendant Jessie Briggs appeared specially in open court and, by oral motion under Rule 12(b) of the Federal Rules of Civil Procedure, objected to this Court's assertion of jurisdiction over the defendant Briggs and moved to dismiss the complaint. The defendant's motion is divisible into five separate contentions:

1. The Court lacks the power to assert jurisdiction over Mrs.

Briggs' person because such action is incompatible with fundamental concepts of due process;

2. Even if the Court had the power to exercise jurisdiction, recognition of Canada's sovereignty precludes the exercise of that power;

3. Rule 4(i) does not authorize service outside the United States;

4. Service of process was insufficient;

5. Venue is not properly laid as to the defendant Briggs.

◼ The most significant issue is whether this Court has the power to take *in personam* jurisdiction over one of its citizens who is not physically present within the United States when served with process. Without attempting here to trace the difficult evolution of the concept of *in personam jurisdiction*,[1] we think it abundantly evident that the due process clause of the Fifth Amendment is satisfied by compliance with the test enunciated in International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945):

"* * * due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (Citations omitted.)

◼ In the instant case it is admitted that the defendant is a citizen of the United States. It is alleged, and supported by affidavit, that the defendant partici-

pated in transactions in the United States and in this district. Thus we must conclude that compelling her to defend the suit brought in the United States would not be inconsonant with our "fundamental concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). In an analogous action, the Supreme Court upheld a typical non-resident motorist statute in Hess v. Pawlowski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927), whereby the forum state could compel defense by a non-resident because of that person's activity within the forum. It was held that the defendant impliedly consented to suit in the forum by reason of his use of that state's highways. 274 U.S. 352, 356, 47 S.Ct. 632, 71 L.Ed. 1091.

In McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957), the Supreme Court compelled a foreign corporation to defend suit on an insurance contract because that contract had a substantial connection with the forum state. In the instant case, the allegations of the complaint (which we must accept as true for purposes of this motion), clearly indicate that the defendant was personally active within the United States and that the allegedly tainted transaction had a substantial connection with this forum. Therefore it is this Court's opinion that we have the power to compel Mrs. Briggs to defend this action.

◼ The defendant next contends that we cannot exercise that power lest we offend the sovereignty of our neighbor Canada, where the defendant was found and served. The defendant suggests that our right to exercise jurisdiction must be conditioned upon approval by Canada through a treaty. We seriously doubt

---

1. Jurisdiction is an elusive concept which has almost defied precise definition; for that reason the search for a fundamental basis for the exercise of jurisdiction has perplexed courts and fascinated legal scholars. Because early standards based on such rigid concepts as presence, domicile or citizenship proved inadequate, the Supreme Court eventually created an elastic criterion to judge the propriety of

a court asserting jurisdiction over the person of a defendant. There are many scholarly anthologies on this trying search for certainty. Cf. Kurland, Supreme Court, the Due Process Clause, and the In Personam Jurisdiction of State Courts, 25 U.Chi.L.R. 569 (1958); Developments in the Law: State Court Jurisdiction, 73 Har.L.R. 909 (1960).

that the defendant, admittedly a citizen of the United States, has standing to complain of an affront to a sovereign which is foreign to her. We need not reach that issue, however, because we perceive of no such invasion of Canada's sovereignty. In Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1931), one of the petitioner's arguments was that in providing for personal service in a foreign country by the United States Consul, the statute violated the due process clause of the Fifth Amendment because "Congress has no power to authorize United States consuls to serve process except as permitted by treaty." Id. p. 436, 52 S.Ct. p. 254. In rejecting this argument, the Supreme Court stated:

> "The question of the validity of the provision for actual service of the subpoena in a foreign country is one that arises solely between the government of the United States and the citizen. The mere giving of such a notice to the citizen in the foreign country of the requirement of his government that he shall return is in no sense an invasion of any right of the foreign government * * *."
> (at p. 439, 52 S.Ct. at p. 255.)

Therefore, we find no principle of comity between nations which precludes this Court from the exercise of jurisdiction over Mrs. Briggs.

 Having determined that we have the power to assert jurisdiction and the right to exercise that power, we address the technical objections of the defendant. It is her contention that the Federal Rules of Civil Procedure afford the Commission no tool by which to implement this Court's power to cross national boundaries. The jurisdiction of district courts over the person of individuals is generally fixed by the territorial limits of the state in which the district is located, and service emanating from that court has similar restrictions. However, there are exceptions. Rule 4(e) of

the Federal Rules of Civil Procedure provides for extraterritorial service, *inter alia,* whenever a statute of the United States authorizes the court to reach beyond its normal territorial limits. Rule 4(i) provides for service of process in foreign countries whenever the extraterritorial service authorized by rule 4 (e) must carry across our national boundaries. This Court is authorized to issue such process and to entertain this suit by 15 U.S.C. §§ 77v(a) and 78aa, which provide, in part:

> "* * * [a]ny such suit or action [under the Securities Act of 1933] may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant *or wherever the defendant may be found.*" (77v(a)) (Emphasis added.)

> "* * * [a]ny suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder [Securities Exchange Act of 1934], or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant *or wherever the defendant may be found.*" (78aa) (Emphasis added.)

The defendant argues that the clause "wherever the defendant may be found" modifies the noun "district" in that sentence, and that therefore there is no provision in these statutes for service of process outside the United States. We must disagree with the defendant's grammatical construction[2] of the sen-

---

2. If Congress had intended that the last clause of the above cited statutes were to modify the noun "district," we assume that they would have used an adjectival clause rather than an adverbial clause such as the one beginning with "wher-

tence in question—"wherever" does not modify "district." If our legislators intended to restrict extraterritorial service, as the defendant argues, to districts of which defendants are inhabitants or in which defendants may be found, we assume they would have said so. If that was their intention, the statute would have read:

> "* * * in any other district of which the defendant is an inhabitant or in which the defendant may be found."

The defendant reminds us that the Supreme Court in Foley Bros. v. Filardo, 336 U.S. 281, 285, 69 S.Ct. 575, 577, 93 L.Ed. 680 (1949), adopted the following canon of statutory construction:

> "The canon of construction which teaches that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States, * * * is a valid approach whereby unexpressed congressional intent may be ascertained. It is based on the assumption that Congress is primarily concerned with domestic conditions."

We cannot disagree with the canon of construction which the defendant has interposed, but it is clearly inapplicable here. The whole spirit of these two statutes reflects, in our opinion, a clear Congressional intent that process should be efficacious in foreign countries. In formulating substantive rules of conduct, Congress generally may only regulate the affairs of the United States within our territorial limits and affect citizens, residents or others within those boundaries. When enacting this particular body of law, Congress was concerned with the stability of the domestic investment market and the safety of American investors. It is clear, however, that that concern reaches across our borders when

it is necessary to recall American citizens to answer to alleged violations of domestic securities laws.

 It is true, when courts are called upon to construe statutes, that we are ordinarily concerned with the ordinary meaning of words. But we may not take those words out of the context in which they were written, nor may we take the entire legislative act out of the historical context in which it was written. The securities laws were a reaction to the cataclysmic collapse of investments in the period immediately following the great crash of 1929. Since the passage of these acts, courts have consistently stated that they are remedial in nature and must be liberally construed in favor of the investing public. We must assume that Congress, in its expressed concern for the public, intended to legislate to the limits of its constitutional power to provide the most expansive protection to that public from the ravages of deceitful practices which had contributed significantly to our national financial collapse. If, as we have shown above, fundamental notions of fairness are not offended when we assert jurisdiction over a United States citizen temporarily out of the country and summon her to this Court by process served in a foreign country, we say in effect that it is within the power of Congress to provide by statute for such action. We must assume, then, that Congress intended §§ 77v and 78aa to serve as implements to recall American citizens to the courts of the land to answer for alleged violations of the securities laws. Any contrary holding, which would recognize that Congress stopped short of its full powers, would be wholly dissonant with the general tenor of these statutes. We think it impossible that Congress could have intended to create a haven for our own citizens just across our border from which an alleged swindler could op-

---

ever." Taking this problem purely as a question of grammar, it is obvious that the adverbial clause "wherever the defendant may be found" is intended to modify the verb "may be served." The Court's grammatical construction of this

section is buttressed by the explanatory language in the report of the House Committee on the 1933 Act. Cf. H.R. Rep.No. 85, 73d Cong., 1st Sess. 25 (1933).

erate in this country with impunity and without fear of recognizance in American courts.

This interpretation of the plain language of the statute is supported by the note of the Advisory Committee on Civil Rules of the Judicial Conference of the United States in its discussion of Rule 4(i). The Committee's note specifically mentions these sections of the Securities Act and the Exchange Act as examples of the federal statutes which permit service of process in foreign countries. Thus we find that there is every reason to uphold the propriety of service upon Mrs. Briggs pursuant to Rule 4(i).

■ The fourth contention of the defendant suggests that the execution of service was somehow insufficient; she has advanced only this conclusionary statement, unsupported by any allegation of fact. There is no irregularity on the face of the summons. The defendant admits that she has received all necessary papers; in fact, she was served twice— once by registered mail and once in person. Cf. Affidavits, supra, p. 1283. Service by both Mr. Tuttle and Mr. Jones was in accord with the order of this Court issued on September 8, 1964. That order was drawn to conform with the provisions of Rule 4(i). Therefore, we must conclude that there was no technical irregularity in the service of process.

■ The final contention of the defendant is that venue is improper as to her because she is not a resident of the Northern District of Ohio. She argues that 28 U.S.C. § 1391(b) confines a non-diversity action to "the judicial district where all defendants reside, except as otherwise provided by law." She further contends that 15 U.S.C. § 77v(a) and 78aa are not "as otherwise provided by law" because they refer only to one defendant and make no provision for bringing an action in one district against separate defendants who are citizens of different states. (Df. Br. pp. 4–5) Thus the defendant asks this Court to read the restricting language of § 1391 into the broad venue provisions of the securities laws. This we cannot do.

■ Whenever there is a specific venue provision in a federal statute, that provision controls to the exclusion of the general provisions of § 1391. 1 Moore, Federal Practice, 1480 (2d Ed. 1961). Under § 1391 the citizenship of the defendant(s) is the factor which compels or precludes their appearance in a particular forum. Under §§ 77v(a) and 78aa, Congress has expanded the scope of venue to include four bases for venue, as enumerated in the statute; citizenship is no longer controlling. Since the allegations of the Securities and Exchange Commission complain of activity by the defendant Briggs within this district, venue is properly laid here to adjudicate those complaints.

The defendant's Motion to Dismiss is overruled.