**Ronald B. BROCKMEYER; Eromedia, Ltd, Plaintiffs–Appellees,**

v.

**David C. MAY, Defendant,**

**and**

**Marquis Publications, Ltd, Defendant–Appellant.**

No. 02–56283.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 2003.

Filed March 24, 2004.

**1224**

Dennis H. Cavanaugh, Esq., New York, NY, for the plaintiffs-appellees.

Before: SILVERMAN, W.A. FLETCHER, and RAWLINSON, Circuit Judges.

Opinion by Judge SILVERMAN; Dissent by Judge WILLIAM A. FLETCHER

## OPINION

SILVERMAN, Circuit Judge.

We must decide whether service of process by an American plaintiff on an English defendant through regular mail to a post office box is valid under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[1] ("Hague Convention"). We hold that such service is valid because Article 10(a) of the Hague Convention allows for service by mail and England's domestic laws do not prohibit service by mail to a post office box.

## I. BACKGROUND

Ronald B. Brockmeyer is the owner of the trademark <<O>>, under which he publishes and distributes various forms of media in adult entertainment and novelties. On August 3, 1998, Brockmeyer, and his company, Eromedia, filed a trademark infringement action against several defendants, including Marquis Publications.

Albert S. Israel, Esq., Long Beach, CA, for the defendant-appellant.

---

1. Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents In Civil Or Commercial Matters, *opened for signature* November 15, 1965; *entered into force for the United States* February 10, 1969; *for the Unit-ed Kingdom* February 10, 1969; 20 U.S.T. 361; 658 U.N.T.S. 163; full text *reprinted in* the United States Code Service (U.S.C.S.) on International Agreements at 265–310.

Brockmeyer mailed a copy of the summons and complaint to Marquis, a corporation organized and existing under the laws of England, at a post office box address listed in the 1997 edition of Marquis Magazine. Brockmeyer eventually obtained a default judgment against Marquis for $424,000.

Marquis moved to set aside the default judgment on the ground that service was improper under the Hague Convention because Brockmeyer sent the summons and complaint by regular mail to Marquis' post office box instead of its registered address. The district court denied Marquis' motion to set aside the default judgment, holding that the Hague Convention permits service of process by mail.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 29 U.S.C. § 1291. We review for abuse of discretion a decision regarding the sufficiency of service of process. *Rio Prop., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir.2002). We also review for abuse of discretion a denial of a motion to set aside a default judgment. *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1109 (9th Cir.2000).

## III. ANALYSIS

### A. Service of Process By Mail Under the Hague Convention to an English Defendant

The well-established meaning of the term "service of process" is a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). Constitutional due process requires that such notice be reasonably calculated to apprise the defendant of the action and afford an opportunity to defend. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Service of process in federal courts is governed by Federal Rule of Civil Procedure 4. Under Rule 4(f)(1), service of process upon individuals of foreign countries may be effected "by any internationally agreed means reasonably calculated to give notice, such as those authorized by the Hague Convention." Here, both the United States and the United Kingdom are signatories to the Hague Convention, and thus service of process by an American plaintiff on an English defendant in England is governed by the Hague Convention. *See Volkswagenwerk*, 486 U.S. at 705, 108 S.Ct. 2104. Article 19 of the Hague Convention provides that service of process from abroad may be made by any method permitted by the internal law of the receiving state. *See also* Fed.R.Civ.P. 4(f)(2)(A) (allowing service to be effected by a manner prescribed by the law of the foreign country).

The Hague Convention of 1965 was intended to "create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time." *See* Hague Convention Preamble, U.S.C.S. on International Agreements at 265. The Convention provides for alternate methods of service: (1) service through the Central Authority of member states; (2) service through consular channels; (3) Article 10 service that permits service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the state.

Much of the current controversy concerning the Hague Convention is over the meaning of Article 10(a), which states that "provided the state of destination does

not object, the present Convention shall not interfere with—(a) the freedom to *send* judicial documents, by postal channels, directly to persons abroad" (emphasis added). Two lines of cases interpreting the language of Article 10(a) have developed. In the first line of cases, following *Ackermann v. Levine*, 788 F.2d 830 (2d Cir. 1986), the Second Circuit interpreted the word "send" to mean "service." *Ackermann* involved a German plaintiff who filed suit in Germany and served by registered mail an American defendant in the United States. The court held that because the United States did not object to mail service under Article 10(a), service by mail was proper under the Hague Convention. *See id.* at 839.

In contrast, in *Bankston v. Toyota Motor Corp.*, 889 F.2d 172, 173–74 (8th Cir. 1989), the Eighth Circuit concluded that the word "send" in Article 10(a) did not mean service of process in a case involving an American plaintiff who served by registered mail a Japanese defendant in Japan. Rather, Article 10(a) provided a method for transmitting judicial documents abroad after service of process had been accomplished. *Id.* at 174. More recently, the Fifth Circuit held in *Nuovo Pignone v. Storman Asia M/V*, 310 F.3d 374, 384 (5th Cir.2002), that a strict reading of the Hague Convention did not permit an Italian plaintiff who filed suit in the United States to serve an Italian defendant in Italy by Federal Express.

Although we have yet to directly address this question, we have stated in dicta that Article 10(a) of the Hague Convention demonstrates that the Convention is not meant to prohibit sending judicial documents by mail. *Lidas, Inc. v. United States*, 238 F.3d 1076, 1084 (9th Cir.2001) (Hague Convention did not appear to require "actual receipt" of notice of an Internal Revenue Service summons).

Within this circuit, district courts are split. In *R. Griggs Group Ltd. v. Filanto Spa*, 920 F.Supp. 1100, 1104–05 (D.Nev. 1996), the court examined the Hague Convention, decisions from other circuits that have addressed the issue, and several supplementary sources, and concluded that service of process by mail is consistent with the overriding purpose of the Convention to develop a system for effecting service of process in other countries. *Accord Meyers v. ASICS Corp.*, 711 F.Supp. 1001, 1007–08 (C.D.Cal.1989) (holding that *Ackermann* represented the majority view, and adopting the same view); *Newport Components v. NEC Home Electronics*, 671 F.Supp. 1525, 1541–42 (C.D.Cal.1987).

Some district courts, on the other hand, have followed *Bankston*, employing strict statutory construction to conclude that the word "send" in Article 10(a) is not the equivalent of the word "service." *See Anbe v. Kikuchi*, 141 F.R.D. 498, 500 (D.C.Hawai'i 1992) (examining service of process by an American plaintiff on a Japanese defendant in Japan); *Mateo v. M/S Kiso*, 805 F.Supp. 792, 796 (N.D.Cal.1992).

We agree, as does our colleague in dissent, with the Second Circuit's decision in *Ackermann.* The very purpose of the Convention is to provide the means for service abroad. *See* Hague Convention Preamble. Article 1 states: "the present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extra-judicial document for *service* abroad." (emphasis added). The structure of the Convention and the placement of subsection (a) within Article 10, which lists alternate methods of service to which contracting states must specifically object, suggests that the word "send" was used as a synonym for the word "serve." *R. Griggs*, 920 F.Supp. at 1104.

Further support for this view is found in the subsequent Special Commission meetings held in 1977 and 1989, which convened to evaluate the Hague Convention and its application. *See* Permanent Bureau Report on the First Special Commission, 17 I.L.M. 319 (1978), and Permanent Bureau Report on the Second Special Commission, 28 I.L.M. 1556 (1989). At both meetings, the conclusion concerning Article 10(a) was that most States did not object to service by mail in their territories. *See id.*

In 1983, as a result of the first Special Commission meeting, the Permanent Bureau published the *Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters,* (1983), (the "Handbook"). The Handbook was produced in cooperation with the representatives of the signatory states. With respect to Article 10(a), it stated that unless a member country specifically objected to service by mail, it should be allowed.[2] The Handbook also concluded that to interpret the Article otherwise would be to contradict the implicit understanding of the delegates at the 1977 Special Commission, and the other legal literature on the Hague Convention as well as its predecessor treaties. *Handbook,* p. 44, 1992.

In the instant case, neither the United States nor the United Kingdom objected to subsection (a) of Article 10. Given that the United Kingdom participated in both of the Special Commission meetings, and cooperated with the production of the Handbook, it clearly could have objected to this subsection. Consequently, under the terms of the Hague Convention, service by mail is permitted within the United Kingdom.

## B. Service of Process By Mail to a Post Office Box

■ We next address the validity of sending service of process by mail to a post office box. Brockmeyer contends that the post office box address was listed in the 3rd/4th quarter 1997 issue of Marquis Magazine, while Marquis counters that it has maintained the same registered address since November 1996, and it should have been served there.

United Kingdom's Civil Procedure Rules allow service of process on registered companies by alternative methods. Civil Procedure Rule 6.5(6) states that a document can be sent or transmitted to, or left at either the principal office of the company or "any place of business of the company within the jurisdiction which has a real connection with the claim." *See* Civil Procedural Rules (1998) U.K. SI 1998/3132 Pt 6(I) r 6.5(6). As the district court pointed out, Civil Procedure Rule 6.5 also states that the importance of service is to bring the pending action to the attention of the company. *See id.* at commentary on effect of rule, 6.5.5.

Although Marquis contends that service to a post office box is not proper under English law, it points to no authority that prohibits it. Nor does Marquis deny that the post office box is an address it held out to the public in its magazine. It stands to reason that an address Marquis printed in its own publication, which goes to the heart of Brockmeyer's trademark claim, can be considered a "place of business ... which has a real connection to the claim." Mailing service to Marquis' post office box was therefore proper.

---

2. *Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial* *Documents in Civil or Commercial Matters,* 2d. Ed., p. 42, 1992.

## C. Service by regular mail

■ Marquis contends that if the Hague Convention is interpreted to allow service by mail, it requires such service to be effected by registered or certified mail to ensure actual receipt. We disagree.[3] The Hague Convention discusses service by postal channels generally, and makes no reference to registered or certified mail. Moreover, service by regular mail is allowed under English domestic law, and the Hague Convention is intended to not interfere with a member country's own methods for service. *See* Hague Convention, Article 19, U.S.C.S. on International Agreements at 269. Also, requiring service by registered or certified mail would nullify service to a post office box, which as discussed above, is not prohibited by English domestic law.

Most of the federal cases discussing foreign service of process by mail involve either registered or certified mail or service by FedEx or other mail delivery service. *See, e.g., Ackermann,* 788 F.2d at 834 (registered mail to Germany); *Bankston,* 889 F.2d at 172 (registered mail to Japan); *Nuovo Pignone,* 310 F.3d at 378 (service by FedEx in Italy); *EOI Corp. v. Medical Mktg. Ltd.,* 172 F.R.D. 133, 134 (D.N.J.1997) (service by DHL in England). In a dicta discussion of whether the Hague Convention requires "actual receipt," however, this court cites with approval *Randolph v. Hendry,* 50 F.Supp.2d 572 (S.D.W.Va.1999), where the court concluded the Hague Convention did not require service of process by registered or certified mail. *Id.* at 578; *see also Lidas,* 238 F.3d at 1084.

The Handbook provides further support that "actual receipt" is not required under the Hague Convention:

> It is accepted that service, made in the requested State by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, establishes a sufficient guarantee that the recipient has actual notice in time to enable him to defend himself.

*Handbook,* Section I, p. 25, 1992 (discussing how to achieve objectives of Convention). By complying with a method of service prescribed by England's domestic laws, Brockmeyer established a sufficient guarantee that Marquis had actual and timely notice.[4] In light of the fact that Brockmeyer did comply with the Hague Convention by mailing service of process to Marquis' post office box, we need not address the question of whether notice is the equivalent of service of process.

---

3. Our colleague in dissent argues that service through international mail may only be effected by Rule 4(f)(2)(C)(ii), which requires registered mail, or through Rule 4(f)(3), which authorizes the district court to allow other methods of service. We disagree. As we see it, the Hague Convention permits service by mail if allowed in the country where papers are being served; Rule 4(f)(2)(A) thus acts as a conduit for permitting service by means of the service laws of the country where served. In our view, though reasonable minds could (and do) disagree, we interpret Rule 4(f)(2)(A) to permit an American plaintiff to serve an English defendant through the mail, just as an English plaintiff would be so allowed. It should make no difference that service in this case was mailed from the United States, and not from Britain; what is vital to our analysis is that service by mail is allowed in Britain, and Rule 4(f)(2)(A) effectively incorporates British service rules for service of process from the United States to England.

4. Marquis appeared to have actual notice, as e-mails submitted by Brockmeyer show that Marquis' publisher, Peter Czernich, planned to hire an American lawyer to make a special appearance in the Southern District of New York. Although Marquis objected to the e-mails being admitted, Marquis did not deny it received notice.

The district court did not abuse its discretion in denying Marquis' motion for relief from judgment because Brockmeyer fulfilled its duty under the Hague Convention when it served by mail a copy of the summons and complaint to Marquis' post office box. Also, Marquis failed to demonstrate any grounds for relief under Rule 60(b). *See American Ass'n of Naturopathic Physicians,* 227 F.3d at 1108.

**AFFIRMED.**

WILLIAM A. FLETCHER, Circuit Judge, Dissenting:

This case substantially expands the ability of federal plaintiffs to serve process on foreign defendants. In a dramatic departure from existing law, the majority holds that a plaintiff in federal district court can serve process on a defendant in England by ordinary first class mail sent from the United States. Not registered mail, not FedEx or DHL, just ordinary first class mail. The kind of mail for which there is no indication that the addressee ever received it. The kind of mail that cannot be used in federal district court for service of process within the United States.

The majority bases its opinion on Article 10(a) of the Hague Convention, which provides that the Convention "shall not interfere with . . . the freedom to *send* judicial documents, by postal channels, directly to persons abroad" (emphasis added). I agree with the majority that the meaning of the term "send," as used in Article 10(a), includes the meaning "serve." But this conclusion tells us only that the Hague Convention does not prohibit service by mail abroad. It tells us nothing about whether there is affirmative authorization for ordinary international first class mail service in federal district court.

Methods of service for a suit in federal district court must be affirmatively authorized by some provision in federal law. Service of process in federal district court is governed by Federal Rule of Civil Procedure 4. Within that rule, service of process abroad is governed by Rule 4(f). After determining that the Hague Convention does not "interfere" with service by mail abroad, the necessary next step is to analyze Rule 4(f) to determine whether it affirmatively authorizes such service. The majority fails to perform such an analysis.

Three provisions of Rule 4(f) potentially authorize service of process by mail abroad. Rule 4(f)(2)(A) authorizes service "in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction[.]" Rule 4(f)(2)(C)(ii) authorizes service by "any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the [district] court to the party to be served[.]" Finally, Rule 4(f)(3) authorizes service by "means . . . as may be directed by the court." It is undisputed that neither Rule 4(f)(2)(C)(ii) nor Rule 4(f)(3) applies, for service was accomplished neither by a form of mail requiring a signed receipt,[1] nor by a means directed by the court.

Thus, on the facts of this case, only Rule 4(f)(2)(A) is available. No court has ever held, before today, that service by international mail is authorized by Rule 4(f)(2)(A). The majority makes a serious mistake in holding under this rule that service by ordinary first class mail sent from the United States to a defendant in England is sufficient service. I respectfully, but strongly, dissent.

---

1. For convenience, I will use the shorthand phrase "registered mail" to include any kind of mail for which there is a return receipt showing that the mail was received.

I. Plaintiffs' Attempts to Serve Process

Plaintiffs' counsel has demonstrated by his course of action that he is unfamiliar with methods of service of process abroad. In August 1998, plaintiffs filed suit against Marquis Publications, Ltd. ("Marquis") and several other defendants in federal district court in the Southern District of New York, alleging trademark infringement and various state-law causes of action. Marquis is a registered company under British law. Plaintiffs' counsel made two attempts at service on Marquis.

Plaintiffs' counsel made his first attempt on October 7, 1998. He sent the summons and complaint, together with a request for waiver of service, by ordinary first class mail to a post office box in England. Marquis did not respond.

On April 5, 1999, the district court in New York transferred the suit to the Central District of California. On October 6, 1999, the district court in California entered an order to show cause ("OSC") why the suit should not be dismissed for lack of prosecution. Plaintiffs were required to respond to the OSC by October 25, 1999.

Plaintiffs' counsel made his second attempt at service four days before the OSC deadline, on October 21, 1999. This time, instead of sending the summons and complaint together with a request for waiver of service, he simply sent the summons and complaint. He sent it by first class mail to the same post office box in England to which he had previously sent the request for waiver. Marquis still did not respond.

Default was entered by the court clerk against several defendants (not including Marquis) on November 24, 1999. Default was entered against Marquis a year later, on November 8, 2000. On February 22, 2002, the district court entered a default judgment of $410,806.12, plus attorneys' fees and costs, against Marquis and two German defendants.

The German defendants moved to set aside the default judgment. On June 6, 2002, the district court granted the motion on the ground that the German defendants had not been properly served under the Hague Convention and German law. The court ordered plaintiffs to serve the two German defendants properly within 90 days or face dismissal with prejudice. The district court subsequently gave plaintiffs a two-month extension until November 4, 2002. Seven days before the expiration of the extended deadline, plaintiffs' counsel finally submitted documents to the German Central Authority for service. The Central Authority rejected the documents the same day for failure to comply with German law. Almost two months later, plaintiffs' counsel resubmitted documents to the German Central Authority. Nothing in the record indicates whether these resubmitted documents complied with German law. On January 3, 2003, the district court dismissed the suit against the German defendants for failure to serve process within the time allowed under the extended deadline. Plaintiffs have not appealed that dismissal.

Marquis moved independently to set aside the default judgment. Marquis contended that mail service on an English defendant in a suit filed in a United States federal court must be by certified or registered mail. Marquis also contended that even if service by first class mail is allowed in England, service on a corporation at a post office box is improper. On June 26, 2002, the district court denied Marquis's motion, holding that plaintiffs' second attempt at service had been successful. It ruled that mail service was not forbidden by the Hague Convention, and that service by ordinary first class mail to a post office box is proper under English law.

Marquis appeals the district court's denial of its motion to set aside plaintiffs' default judgment. The resolution of this appeal depends on whether Marquis was properly served.

## II. The Hague Convention

Because service of process was attempted abroad, the validity of that service is controlled by the Hague Convention to the extent that the Convention applies. *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 705, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988) ("[C]ompliance with the Convention is mandatory in all cases to which it applies.").

The Hague Convention, ratified by the United States in 1965, regularized and liberalized service of process in international civil suits. Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (hereinafter "Convention"). The primary means by which service is accomplished under the Convention is through a receiving country's "Central Authority." The Convention affirmatively requires each member country to designate a Central Authority to receive documents from another member country. *See id.,* art. 2. The receiving country can impose certain requirements with respect to those documents (for example, that they be translated into the language of that country). *See id.,* art. 5. If a document complies with applicable requirements, the Convention affirmatively requires the Central Authority to effect service in its country. *See id.,* arts. 4 & 5.

The Convention also provides that other methods of serving documents are permitted, but the availability of those other methods depends on affirmative authorization from laws other than the Convention. For example, Article 10(a) of the Convention allows service of process by mail, but only if some law other than the Convention affirmatively authorizes such service.

Article 10(a) recites:

Provided the State of destination does not object, the present Convention *shall not interfere with—*

(a) *the freedom to send judicial documents, by postal channels,* directly to persons abroad.

(Emphasis added.) As is evident from its text, Article 10(a) does not itself authorize the use of "postal channels." Nor does it define what type of mail qualifies as use of postal channels. It merely provides that the Convention "shall not interfere with" the "freedom" to use postal channels if the "State of destination" does not object to their use.

American courts have disagreed about whether the phrase "the freedom to *send* judicial documents" in Article 10(a) includes within its meaning "the freedom to *serve* judicial documents." The panel majority in this case concludes that the meaning of "send" in Article 10(a) includes "serve." I agree with that conclusion. This panel therefore unanimously votes to join the Second Circuit in concluding that the Hague Convention does not "interfere with ... the freedom to [serve] judicial documents" by mail, unless the "State of destination" objects. *See Ackermann v. Levine,* 788 F.2d 830 (2d Cir.1986) ("send" includes "serve"); *contra Bankston v. Toyota Motor Corp.,* 889 F.2d 172 (8th Cir. 1989) ("send" does not include "serve").

We also join the essentially unanimous view of other member countries of the Hague Convention. *See, e.g.,* Case C–412/97, *E.D. Srl. v. Italo Fenocchio,* 1999 E.C.R. I–3845, [2000] C.M.L.R. 855 (Court of Justice of the European Communities) ("Article 10(a) of [the Hague Convention] allows service by post."); *Integral Energy*

& *Envtl. Eng'g Ltd. v. Schenker of Canada Ltd.*, (2001) 295 A.R. 233, 2001 WL 454163, (Alberta Queens Bench) ("Article 10(a) of the Hague Convention provides that if the state of destination does not object, judicial documents may be served by postal channels . . . ."), *rev'd on other grounds*, (2001) 293 A.R. 327; *R. v. Re Recognition of an Italian Judgement*, [2002] I.L.Pr. 15, 2000 WL 33541696 (Thessaloniki Court of Appeal, Greece) ("It should be noted that the possibility of serving judicial documents in civil and commercial cases through postal channels . . . is envisaged in Article 10(a) of the Hague Convention . . . .").

I do not wish to add unnecessarily to the majority's discussion of Article 10(a). But I point out two items of evidence that the majority does not mention. They are important because they support the conclusion (with which the majority agrees) that Article 10(a) does not interfere with international service of process by mail. They are also important because they support a conclusion (with which the majority *does not* agree) that international service of process by mail must be sent by registered mail rather than ordinary first class mail, and that, in the absence of a court order, service by international mail must be accomplished under Rule 4(f)(2)(C)(ii).

First, the United States government, through the State Department, has specifically disapproved the Eighth Circuit's holding in *Bankston* that "send" does not include "serve." Service had been attempted in *Bankston* by registered mail sent to Japan, and the Eighth Circuit held that such service was not permitted by Article 10(a). 889 F.2d at 174. On March 14, 1991, the Deputy Legal Advisor of the State Department wrote a letter to the Administrative Office of the United States Courts. Letter from Alan J. Kreczko, U.S. Dep't of State Deputy Legal Adviser,

to the Admin. Office of the U.S. Courts (March 14, 1991), *quoted in* U.S. Dep't of State Op. Regarding the *Bankston* Case, 30 I.L.M. 260 (1991). The letter first emphasized that courts should give deference to executive branch interpretations of treaties:

> [W]hile courts in the United States have final authority to interpret international treaties for the purposes of their application as law of the United States, they give great weight to treaty interpretations made by the Executive Branch.

*Id.* Then, after discussing Article 10(a) and noting that Japan did not object to the use of postal channels under Article 10(a), the letter concluded:

> We therefore believe that the decision of the Court of Appeal in *Bankston* is incorrect to the extent that it suggests · that the Hague Convention does not permit as a method of service of process the sending of a copy of a summons and complaint by *registered mail* to a defendant in a foreign country.

*Id.* (emphasis added). The letter from the State Department is notable not only for its approval of service of process by mail, but also for its specification that such service be made by "registered mail." Nothing in the State Department letter suggests—or even hints—that service by ordinary international first class mail is permitted.

Second, numerous State Department circulars state that service by mail is permitted in international civil litigation, but these circulars uniformly specify that such service be made by registered mail. The general circular, applicable to all countries, lists six methods by which service may be effected in international litigation. U.S. Dep't of State, *Circular: Service of Process Abroad* ("B. SUMMARY: METHODS OF SERVICE ABROAD"), *in Selected Materials in Int'l Litig. and*

*Arbitration,* 688 PLI/Lit. 777, 1021 (2003). Only one of the methods is service by mail, described in the circular as "international registered or certified mail, return receipt requested." The general circular elaborates: "E. SERVICE BY INTERNATIONAL REGISTERED MAIL: (Rule 4(f)(2)(C)(ii) F.R.C.P.) *registered or certified mail, return receipt requested* may be sent to most countries of the world. Rule 4(f)(2)(C) provides that this method of service may be used unless prohibited by the law of the foreign country." *Id.* (emphasis added). Service by ordinary first class mail is not on the list of permissible methods of service.

The State Department circular particularly tailored to the United Kingdom also specifies that mail service be made by international registered mail. U.S. State Dep't, *Judicial Assistance in the United Kingdom (England, Scotland, Wales, and Northern Ireland), in Selected Materials in Int'l Litig. & Arbitration,* 689 PLI/Lit. 13, 325 (2003). That circular provides: "2. SERVICE BY MAIL[:] The U.K. has not declared that it objects to Article 10(a) of the Hague Service Convention. Therefore, service by *international registered mail* is permitted." *Id.* (emphasis added). Like the general circular, the circular tailored to the United Kingdom nowhere suggests that service may be effected by ordinary international first class mail.

### III. Rule 4(f): "Service Upon Individuals in a Foreign Country"

Article 10(a) of the Hague Convention thus permits service of process by international mail, provided only that the receiving country does not object. However, Article 10(a) does not itself affirmatively authorize international mail service. As the Rapporteur for the Hague Convention wrote in explaining Article 10(a), "It

should be stressed that in permitting the utilization of postal channels, ... the draft convention did not intend to pass on the validity of this mode of transmission under the law of the forum state: *in order for the postal channel to be utilized, it is necessary that it be authorized by the law of the forum state.*" 1 Bruno A. Ristau, *Int'l Judicial Assistance* § 4–3–5, at 205 (2000) (quoting Serv. Convention Negotiating Doc. at 373, translated from French by the author) (emphasis added); *see also id.* § 4–1–6, at 162 ("Even though a contracting state may not object to methods of service of foreign judicial documents in its territory in a manner other than as provided for in the Convention ... *it is still necessary that the law of the state where the action is pending authorize the particular method of service employed.*") (emphasis added).

In other words, we must look outside the Hague Convention to the law of the forum in which the suit is filed for affirmative authorization of the international mail service that is merely not forbidden by Article 10(a). The majority cites *Randolph v. Hendry,* 50 F.Supp.2d 572, 578 (S.D.W.Va.1999), for the proposition that the Hague Convention does not require service of process by registered or certified mail. Slip op. at 3596–97. This is a true but incomplete statement. Article 10(a) of the Hague Convention requires nothing; it merely does not "interfere" with service by mail. Article 10(a) does not affirmatively authorize service by mail, and it necessarily does not answer the question whether international service of process for a suit in federal district court must be by registered mail. Any affirmative authorization of international service by mail, and any requirements as to how that service must be accomplished, must come from some law other than the Convention. The very case cited by the majority explains precisely this point:

[T]he Hague Convention provides the mechanism for service of process and leaves more detailed requirements up to the individual member nations to determine. Thus, *whether a return receipt is required is a question wholly determined with reference to the applicable law of the forum seeking to obtain jurisdiction over the defendant* and the overarching requirements of procedural due process.

*Id.* at 578–79 (emphasis added). For affirmative authorization of service of process on defendants in foreign countries, including corporations,[2] we look to Federal Rule of Civil Procedure 4(f).

### A. Rule 4(f)(1)

Rule 4(f)(1) affirmatively authorizes service by those methods of service affirmatively authorized by international agreements, including the Hague Convention. It provides:

(f) ... Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed ... may be effected in a place not within any judicial district of the United States:

(1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention of the Service Abroad of Judicial and Extrajudicial Documents[.]

The Hague Convention affirmatively authorizes service of process through the Central Authority of a receiving state, and Rule 4(f)(1), by incorporating the Convention, in turn affirmatively authorizes use of a Central Authority. However, Rule 4(f)(1) does not go beyond means of service affirmatively authorized by international agreements. If another means, such as international mail service, is allowed but not affirmatively authorized by an international agreement, we must look to other sections of Rule 4(f) for such authorization.

### B. Rules 4(f)(2)(A), 4(f)(2)(C)(ii), and 4(f)(3)

Three later sections of Rule 4(f) potentially provide affirmative authorization of service by international mail. They are Rules 4(f)(2)(A), 4(f)(2)(C)(ii), and 4(f)(3). These sections were added to the rules in 1963, before the Hague Convention was signed. Between 1963 and 1993, present-day Rules 4(f)(2)(A), 4(f)(2)(C)(ii), and 4(f)(3) were, respectively, Rules 4(i)(1)(A), 4(i)(1)(D) and 4(i)(1)(E). In 1993, Rule 4 was finally amended to take the Convention into account, as reflected in the current Rule 4(f)(1). The three sections that had been added in 1963 were renumbered and incorporated into Rule 4(f)(2) and 4(f)(3) without any relevant changes in text.

### 1. Rule 4(f)(2)(A)

Rule 4(f)(2)(A) (previously Rule 4(i)(1)(A)) affirmatively authorizes service by means used in the receiving country for service in an action in its courts of general jurisdiction. Such means do not include service by international mail. Rule 4(f)(2)(A) provides:

(f) [S]ervice ... may be effected in a place not within any judicial district of the United States:

. . . .

(2) if there is no internationally agreed means of service or the appli-

---

**2.** Fed.R.Civ.P. 4(h)(2), directs that service on a foreign corporation, if done outside of the United States, shall be effected "in any manner prescribed for individuals by subdivision

[4](f) except personal delivery as provided in paragraph (2)(C)(i) thereof," unless a waiver of service has been obtained and filed.

cable international agreement allows other means of service, provided that service is reasonably calculated to give notice:

> (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction [.]

(Emphasis added.) The Committee Note accompanying the 1963 amendments strongly suggests that Rule 4(f)(2)(A) was intended affirmatively to authorize forms of *personal* service authorized by the receiving country, but not affirmatively to authorize service by international mail. *See* Fed.R.Civ.P. 4(i)(1)(A) (1963) Advisory Committee Note (describing personal service). In relevant part, the Note provides:

> ... Service abroad may be considered by a foreign country to require the performance of judicial, and therefore "sovereign," acts within its territory, which that country may conceive to be offensive to its policy or contrary to its law. For example, *a person* not qualified to serve process according to the law of foreign country [sic] *may find himself subject to sanctions if he attempts service therein.* ...
>
> ....
>
> ... Subparagraph (A) of paragraph (1), permitting service by the method prescribed by the law of the foreign country *for service on a person* in that country in a civil action in any of its courts of general jurisdiction, provides an alternative that is likely to create the least objection in the place of service and also is likely to enhance the possibil-

ities of securing ultimate enforcement of the judgment abroad.

*Id.* (citations omitted) (emphasis added).

A frequently invoked example of service under Rule 4(f)(2)(A) is "substituted service in Italy by delivery to the concierge of the building where the person to be served lives, as long as the method of service is likely to give the actual notice required by United States due process concepts." Gary N. Horlick, *A Practical Guide to Service of Process Abroad,* 14 Int'l Law. 637, 640 (1980) (interpreting previous Rule 4(i)(1)(A)). Consistent with this example, courts have applied Rule 4(f)(2)(A) to approve personal service when carried out in accord with foreign law.[3] In *Cosmetech International, LLC v. Der Kwei Enterprise,* 943 F.Supp. 311, 316 (S.D.N.Y.1996), for example, the district court upheld service of process under Rule 4(f)(2)(A) when the plaintiff followed the manner of service explicitly prescribed by Taiwanese law by arranging for personal service on a corporation's officer and managing agent at the corporation's offices in Taiwan. Similarly, in *Supra Medical Corp. v. McGonigle,* 955 F.Supp. 374, 383–84 (E.D.Pa.1997), the district court upheld personal service of process in the United Kingdom under Rule 4(f)(2)(A) when the plaintiff followed service of process procedures expressly prescribed by British law by using a British solicitor to effect personal service on a defendant's legal representative.

I have found no cases upholding service of process by international mail under Rule 4(f)(2)(A), and the majority cites none. However, there are a number of cases *rejecting* service of process by international mail under that rule. For example, in *Prewitt Enterprises v. OPEC,* 353 F.3d 916, 925 (11th Cir.2003), the court

---

**3.** Rule 4(h)(2) does not authorize personal service under Rule 4(f)(2)(C)(i), but personal service is acceptable under Rule 4(f)(2)(A) on a corporation if done in the manner prescribed by foreign law. *See* Fed.R.Civ.P. 4(h)(2); note 2, *supra.*

rejected plaintiff's argument that Rule 4(f)(2)(A) authorized service of process on OPEC by international registered mail sent to Austria. The plaintiff had argued that mail was an approved "method" of service, because Austrian law allowed for service of process by mail, when service was made by Austrian courts on persons resident in Austria and abroad. The court, however, disagreed and held that such provisions did not apply to attempted service by international mail sent *from* abroad to Austria. *Id.* As the court observed, "[n]one of these Austrian law provisions [cited by the plaintiff] directly pertain to service mailed from abroad upon international organizations resident in Austria." *Id.*

In *Dee–K Enterprises v. Heveafil Sdn. Bhd.*, 174 F.R.D. 376, 378–79 (E.D.Va. 1997), the court also found that Rule 4(f)(2)(A) was inapplicable to authorize service of process by international mail. The district court reasoned that Rule 4(f)(2)(A) did not authorize service of process by DHL courier from the United States in Indonesia and Malaysia because "service via DHL courier or its equivalent is not prescribed by the laws of either Indonesia or Malaysia for service in an action in the courts of those countries." *Id.* Similarly, in *Resource Ventures, Inc. v. Resources Management International*, 42 F.Supp.2d 423, 430 (D.Del.1999), the court reasoned that service of process by international registered mail was not prescribed by Indonesian law, and was therefore not an appropriate method of service under Rule 4(f)(2)(A). After finding that Rule 4(f)(2)(A) did not authorize service by international mail, the courts in both *Dee–K* and *Resource Ventures* then sought to determine whether the plaintiffs had carried out service by international mail in accord with the requirements of Rule 4(f)(2)(C)(ii). *Dee–K*, 174 F.R.D. at 379; *Resource Ventures*, 42 F.Supp.2d at 430.

### 2. Rule 4(f)(2)(C)(ii)

Affirmative, explicit authorization for service by international mail is found only in Rule 4(f)(2)(C)(ii) (previously Rule 4(i)(1)(D)). This rule authorizes service abroad by registered mail when addressed and mailed by the clerk of the federal district court in which the suit is filed. It provides:

> (f) [S]ervice ... may be effected in a place not within any judicial district of the United States:
>
> . . . .
>
> (2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:
>
> . . . .
>
> (C) unless prohibited by the law of the country, by
>
> . . . .
>
> (ii) *any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served* [.]

(Emphasis added.)

The 1963 Committee Note provides, in relevant part:

> Subparagraph (D) of paragraph (1), permitting service by certain types of mail, affords a manner of service that is inexpensive and expeditious, and requires a minimum of activity within the foreign country. . . . Since the reliability of postal service may vary from country to country, *service by mail is proper only* when it is addressed to the party to be served and a form of mail requiring a signed receipt is used. An additional safeguard is provided by the require-

ment that the mailing be attended to by the clerk of the court.

(Emphasis added.)

Two things are striking about the Committee Note. First, the Note makes clear that service by international mail is carefully structured to ensure that the mailed notice was actually received. Not only is registered mail required; in addition, the notice must be sent by the clerk of the district court.

Second, the Note's use of the phrase "service by mail is proper *only* when" strongly suggests that non-court-ordered service by international mail is not proper if made by means other than those specified in Rule 4(f)(2)(C)(ii). That is, service by international mail is not proper unless it is registered mail sent by the clerk, as specified in this section of the rule. When this Note is read in conjunction with the Note for Rule 4(f)(2)(A), *supra*, what was already fairly clear becomes unmistakable: Rule 4(f)(2)(C)(ii) is the only section of Rule 4(f) under which service by international mail is authorized in the absence of a court order.

The State Department's general circular, discussed above, reads Rule 4(f)(2)(C)(ii) in just this way. *See* U.S. Dep't of State, *Circular: Service of Process Abroad*, *supra*. The circular states that service by mail abroad is available by "registered or certified mail, return receipt requested," and relies exclusively on Rule 4(f)(2)(C)(ii) as its authority. It does not mention the possibility of service by international mail under Rule 4(f)(2)(A).

Several courts approving service of process by international mail under the Hague Convention have upheld service of process by international registered mail, without explicitly discussing Rule 4(f)(2)(C)(ii). *See, e.g., EOI Corp. v. Medical Mktg. Ltd.*, 172 F.R.D. 133 (D.N.J.1997) (service by DHL); *R. Griggs Group Ltd. v. Filanto Spa*, 920 F.Supp. 1100 (D.Nev.1996) (service by Federal Express). Many other courts, however, have explicitly recognized that service of process by international mail must comply with Rule 4(f)(2)(C)(ii), or with its predecessor Rule 4(i)(1)(D). *See, e.g., Dee-K*, 174 F.R.D. at 382; *Resource Ventures*, 42 F.Supp.2d at 430. In *Louis Dreyfus Corp. v. McShares, Inc.*, 723 F.Supp. 375, 378 (E.D.La.1989), the court was asked to decide whether service by express mail service was authorized. After observing that the defendant had not waived service, the court commented that "[t]he only applicable provision here is Rule 4(i)(1)(D)." Similarly, in *Macri v. Yamauchi*, 2002 WL 390223 (N.D.Ill. Mar.11, 2002), the plaintiff did not specify which federal rule authorized his mail service to Vietnam. The court therefore assumed that the plaintiff was arguing that he had served process pursuant to Rule 4(f)(2)(C)(ii) and held that the plaintiff had not fulfilled the rule's requirements. *Id.* at *3. In *Borschow Hospital & Medical Supplies, Inc.*, 143 F.R.D. 472, 486 (D.P.R. 1992), the court held that compliance with Rule 4(i)(1)(D) was a requirement for effective service of process by international mail. The court held that "send" meant "serve" under the Hague Convention, and thus the Convention did not "interfere" with service of process by mail. *Id.* at 478–79. The court further held that such service was proper only "so long as ... said process conforms to the requirements encoded in F.R. Civ. P. 4(i)(1)(D)[.]" *Id.* at 486; *see also Arrogar Distrib., Inc. v. Kis Corp.*, 151 F.R.D. 221, 225 (D.P.R.1993) (applying *Borschow*'s test); *Curcuruto v. Cheshire*, 864 F.Supp. 1410, 1412 n. 2 (S.D.Ga.1994) (same).

### 3. Rule 4(f)(3)

Finally, Rule 4(f)(3) (previously Rule 4(i)(1)(E)) affirmatively authorizes the fed-

eral district court to direct any form of service that is not prohibited by an international agreement. It provides:

> (f) [S]ervice ... may be effected in a place not within any judicial district of the United States:
>
> . . . .
>
> *(3) by other means not prohibited by international agreement as may be directed by the court.*

(Emphasis added.)

The 1963 Committee Note makes clear that this rule gives considerable discretion to the district court:

> Subparagraph (E) of paragraph (1) adds flexibility by permitting the court by order to tailor the manner of service to fit the necessities of a particular case or the peculiar requirements of the law of the country in which the service is to be made.

Fed.R.Civ.P. 4(1)(E) (1963) Advisory Committee Note. Given both its text and the flexibility mentioned in the Note, Rule 4(f)(3) is properly understood to include service of process by mail. Where appropriate, court-ordered international mail service under this rule need not be by registered mail, as would be required for service by mail under Rule 4(f)(2)(C)(ii). Indeed, the 1963 Committee Note singles out for particular mention the possibility that, under Rule 4(f)(3), "[a] court may in some instances specifically authorize use of ordinary mail." But dispensing with registered mail is explicitly conditioned on a court order authorizing such service.

The decision whether to allow alternative methods of service of process under Rule 4(f)(3) is committed to the "sound discretion of the district court." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir.2002) (permitting service on a foreign corporation by regular mail and by e-mail, when authorized by the district court). The classic case is *Levin v. Ruby Trading Corp.*, 248 F.Supp. 537 (S.D.N.Y.1965), in which the court authorized service abroad by ordinary mail under Rule 4(i)(1)(E). The court observed that "[s]ubparagraph 4(i)(1)(D) authorizes service by mail without court supervision, and it is for this reason that the double safeguard of mailing by the clerk of the court and a signed receipt was set up." *Id.* at 540. The court held that it could authorize service by ordinary mail under subparagraph (E), pointing out that "the necessary safeguards are determined by the court, which to assure adequacy of notice, may 'tailor the manner of service to fit the necessities of a particular case....' " *Id.* (quoting Fed.R.Civ.P. 4(i)(1)(E) (1963) Advisory Committee Note).

Courts have authorized a variety of alternative methods of service abroad under current Rule 4(f)(3) and former Rule 4(i)(1)(E), including not only ordinary mail and e-mail but also publication and telex. *Rio Props.*, 284 F.3d at 1016 (citing *SEC v. Tome*, 833 F.2d 1086, 1094 (2d Cir.1987) (condoning service of process by publication); *Int'l Controls Corp. v. Vesco*, 593 F.2d 166, 176–78 (2d Cir.1979) (approving service by ordinary mail to last known address); *Forum Fin. Group v. President, Harvard Coll.*, 199 F.R.D. 22, 23–24 (D.Me.2001) (authorizing service by certified mail to defendant's attorney); *Smith v. Islamic Emirate*, 2001 WL 1658211, at *2–*3 (S.D.N.Y. Dec.26, 2001) (authorizing service of process by publication on Osama bin Laden and al-Qaeda); *Broadfoot v. Diaz (In re Int'l Telemedia Assoc.)*, 245 B.R. 713, 719–20 (Bankr.N.D.Ga.2000) (authorizing service via facsimile, ordinary mail, and email); *Levin*, 248 F.Supp. at 541–44 (S.D.N.Y.1965) (employing service by ordinary mail)). However, in *Rio* (and in all the cases it cites as applying Rule 4(f)(3)), the plaintiffs took a step that plaintiffs failed to take in this case: They

obtained prior court approval for an alternative method of service of process.

## IV. Application of Rule 4(f)(2)(A) to This Case

Plaintiffs in this case do not contend either that they complied with the registered mail requirement of Rule 4(f)(2)(C)(ii), or that the district court ordered service by first class mail under Rule 4(f)(3). Thus, the only section of Rule 4(f) upon which plaintiffs can possibly rely is Rule 4(f)(2)(A), which affirmatively authorizes service made "in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction." The majority focuses on whether mail service to a post office box is acceptable under English law. However, the prior and determinative question is whether service by mail from the United States is authorized under Rule 4(f)(2)(A) *at all,* regardless of the address to which it is sent. Rather than performing an analysis of Rule 4(f)(2)(A), the majority relegates it to a footnote. Maj. at 1228, n. 3.

A number of factors counsel against reading Rule 4(f)(2)(A) to authorize service by international mail. Those factors include the function of Rule 4(f)(2)(A) in the overall scheme of Rule 4(f); the absence of any mention of service by international mail in Rule 4(f)(2)(A); the 1963 Committee Note for Rules 4(f)(2)(A), which refers only to methods of personal service; the explicit mention of international registered mail in Rule 4(f)(2)(C)(ii); the Committee Note for Rule 4(f)(2)(C)(ii), which states that "service by mail is proper *only* when it is addressed to the party to be served and a form of mail requiring a signed receipt is used"; the State Department general circular, which refers only to Rule 4(f)(2)(C)(ii) as authorizing service by international mail; the fact that courts have

felt it necessary to invoke either Rule 4(f)(2)(C)(ii) or Rule 4(f)(3) to uphold service by international mail; and the complete absence of any previous court decision holding that Rule 4(f)(2)(A) authorizes service by international mail.

An analysis specifically focused on service of process in England reinforces this conclusion that Rule 4(f)(2)(A) does not authorize service by international mail.

### A. British Objection to Proposed Revision of Rule 4(d)

A powerful reason to read Rule 4(f)(2)(A) as not authorizing service on foreign defendants by international mail— and, in particular, ordinary international first class mail—is found in an exchange between the British government and the United States Department of State in 1991, concerning a then-proposed revision to Federal Rule of Civil Procedure 4. *See* 127 F.R.D. 2661–84 (1989). As amended, this proposal eventually became what is now Rule 4(d), authorizing a plaintiff to request a waiver of service.

To understand the significance of the exchange, it is helpful first to describe the operation of the waiver of service provision. Under Rule 4(d) as ultimately adopted, a federal plaintiff may send a request for a waiver of service to a defendant by "first-class mail or other reliable means." Fed.R.Civ.P. 4(d)(2)(B). If the defendant waives service of process, he or she is given extra time to answer. If the defendant is within the United States, he or she gets sixty (rather than twenty) days; if outside the United States, he or she gets ninety days. Fed.R.Civ.P. 4(d)(3). If a defendant is within the United States and fails to waive service, he or she would be assessed costs incurred in effecting service, absent good cause for the failure. Fed.R.Civ.P. 4(d)(2). If the defendant is outside the United States and

fails to waive service, there is no provision under which costs of service will be assessed.

As originally proposed in 1989, Rule 4(d) would have assessed costs incurred in effecting service against *all* defendants who failed to waive service, including defendants outside the United States. *See* 127 F.R.D. 271–72. The British government strongly objected to assessment of costs against non-waiving defendants living in the United Kingdom. *See* Letter from Edwin D. Williamson, Legal Adviser, U.S. Dep't of State, to Chief Justice Rehnquist (April 19, 1991) ("Williamson letter"). The British Embassy transmitted to the Department of State a diplomatic note expressing its substantial concern over the proposal, which the Department of State in turn forwarded to Chief Justice Rehnquist.

The diplomatic note stated, in relevant part:

> The proposed new paragraph (d)(2) of Rule 4 would impose on a defendant who has received notice of the commencement of the action a duty to waive service of the summons. Inasmuch as this procedure, which would coerce a waiver of service of the summons, would be equally applicable to United Kingdom citizens resident in the United Kingdom, the British Government would object to it. The waiver system would conflict with the Hague Service Convention, and it would be oppressive, since agreement would be elicited under the threat of the proposed sanction in costs....

> .... [T]he British Government would object to the proposed waiver system for commencing proceedings against those resident in the United Kingdom. The proposed system would, moreover, run contrary to the public policy of the United Kingdom, which is that litigation affecting persons resident in the United Kingdom and commenced in foreign jurisdictions should be properly documented in public form.

Williamson letter, at 2–3 (enclosing U.K. Embassy Note No. 63).

The Supreme Court returned the proposal to the Civil Rules Advisory Committee for further study "in the light of various comments that had been received, most notably from the British Embassy." 146 F.R.D. 515 (1992) (Excerpt from the Report of the Judicial Conference Committee on Rules of Practice and Procedure). In response, the Advisory Committee revised the proposed rule eliminate the provision assessing costs of service against non-waiving foreign defendants. *See Id.*; *see also* Fed.R.Civ.P. 4(d)(2) (1993). The Committee specifically explained that its revision addressed concerns raised by the British government. *See* 147 F.R.D. 521 (Attachment B to letter to Hon. Robert E. Keeton, Chairman, May 1, 1992). Among other things, the Committee Notes to Rule 4(d) state: "Unless the addressee consents, receipt of the request under the revised rule does not give rise to any obligation to answer the lawsuit, [and] does not provide a basis for default judgment[.]" Fed.R.Civ.P. 4(d) (1993) Advisory Committee Note.

The objection of the British government to the proposed rule makes sense only if the British government understood Rule 4(f) not to permit service by ordinary, international first class mail against a defendant in England. This is so because if Rule 4(f)(2)(A) had authorized service by international first class mail, a plaintiff would never need to send a request for waiver of service by international first class mail. The plaintiff would simply *effect service* by international first class mail.

Just as the British objection to the proposed provision makes sense only against a background assumption that service by in-

ternational first class mail was not authorized by Rule 4(f)(2)(A), so, too, the Committee's response to the British objection makes sense only against the same assumption. It is simply inconceivable that the Committee would have responded in the way it did if it had understood Rule 4(f)(2)(A) to authorize actual service—as distinct from a request for waiver of service—by international first class mail.

### B. English Rules for Service of Process in its Own Courts

The majority concludes that service by international mail is authorized by Rule 4(f)(2)(A) because English law permits service of process by mail against English defendants for suits in English courts. There are two independently sufficient reasons why the majority's conclusion cannot be correct.

First, as discussed above, Rule 4(f)(2)(A), upon which plaintiffs must rely in this case, does not authorize service by international mail. Second, even if Rule 4(f)(2)(A) could be read to authorize international service of process by mail, plaintiffs would have to serve process "in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction." Fed.R.Civ.P. 4(f)(2)(A). That is, English law would have to authorize service of process on an English defendant by international mail (*i.e.*, by mail sent from another country) for an action in its own courts of general jurisdiction.[4] The English rules of civil procedure do not authorize such service.

The majority concludes that English law permits service of a federal district court suit by international first class mail to a post-office box because defendant Marquis "points to no authority that prohibits it." Maj. at 1228. However, once service is challenged, plaintiffs rather than defendants bear the burden of establishing that service was valid under Rule 4. 4A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1083 (3d ed. 2002 & Supp.2003); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir.1993); *see also Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir.1986) (plaintiff has the burden of establishing personal jurisdiction). My review of the English rules for service of process in English courts of general jurisdiction makes it clear that plaintiffs have not sustained, and cannot sustain, that burden.[5]

The applicable English rules for service of process in civil suits were promulgated on December 10, 1998, and became effec-

---

4. The text of Rule 4(f)(2)(A) does not categorically exclude service by mail. If the question were before me, I would interpret Rule 4(f)(2)(A) to authorize service in the foreign country in which service is accomplished entirely by mail sent from within that country, as distinct from international mail sent from the United States. If the foreign country in which service is sought to be accomplished allows service by its domestic mail, Rule 4(f)(2)(A) allows a federal court plaintiff to serve process by mail sent from within that country, if done in accordance with the specific requirements of the law of that foreign country.

5. In interpreting foreign law, a district court "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed.R.Civ.P. 44.1. A ruling on foreign law is a question of law reviewed *de novo*. Federal courts " 'may reject even the uncontradicted conclusions of an expert witness and reach their own decisions on the basis of independent examination of foreign legal authorities.' " *Pazcoguin v. Radcliffe*, 292 F.3d 1209, 1216 (9th Cir.2002) (quoting *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 713 (5th Cir. 1999)).

tive on April 26, 1999.[6] Civil Procedure Rules (2003), SI 1998/3132; 1 *Civil Procedure* ¶ 1.0.2, at 5 (Lord Justice May et al. eds., 2002 & Supp.2003) (hereinafter *"White Book"*). Plaintiffs sent their second complaint to Marquis in October 1999.

The English rules permit service by "first class post," but they clearly contemplate that process must have been mailed from within England. Under Rule 7.2(1), an English civil suit is commenced when an English court issues a "claim form" at the request of the claimant. A claim form, when completed, is analogous to our complaint. Once issued by the court, the claim form may be served on the defendant or defendants. Rule 6.2 provides for service of judicial documents, including claim forms, as follows: [7]

> (1) A document may be served by any of the following methods—
>> (a) personal service, in accordance with rule 6.4;
>> (b) *first class post;*
>> (c) leaving the document at a place specified in rule 6.5;
>> (d) through a document exchange in accordance with the relevant practice direction; or
>> (e) by fax or other means of electronic communication in accordance with the relevant practice direction.

(Emphasis added.)

Rule 6.7 provides that a document sent by first class post, including a claim form, is deemed served the second day after posting. English courts interpret the "deeming" provision strictly. For example,

in *Godwin v. Swindon Borough Council,* [2002] 1 W.L.R. 997 (C.A.Eng.), the court held that the "deemed date" of service under Rule 6.7 was fixed, and not rebuttable by evidence of the actual date of receipt. *See also Anderton v. Clwyd,* [2002] 1 W.L.R. 3174 (C.A.Eng.).

Rule 6.14 provides that when a "claimant" serves the claim form, "he must file a certificate of service within 7 days of service of the claim form" and "he must not obtain judgment in default ... unless he has filed the certificate of service." Rule 6.10 specifies that the certificate of service filed with the English court must state "that the document has not been returned undelivered" and, further, in cases where service has been made by first class post, must state the date of posting.

These civil rules are clearly designed to apply only to suits filed in English courts and for service mailed from within England. They simply do not make sense when applied to service of process sent to an English defendant by international mail. For example, the rule deeming the date of service to be two days after posting makes no sense for claim forms sent from the United States, Japan, Venezuela, or Papua New Guinea. Some of the rules cannot be literally obeyed if service is attempted by international mail. For example, the rules requiring that an English court issue the "claim form" that commences the suit, and the rule requiring that a certificate of service of that form by mail be filed in an English court, cannot be

---

**6.** I refer to English law rather than to the law of the United Kingdom because rules governing service of process differ in Scotland and Northern Ireland. *See* 1 *Civil Procedure* ¶ 6.17.6 (Lord Justice May et al. eds.2002) (commentary to Pt. 6, r. 6.17).

**7.** England also allows for service by post to a company's registered address, under Section 725 of the Companies Act. Companies Act § 725, 1985, c. 6 (Eng.); *Murphy v. Staples Ltd., reported under Cranfeld v. Bridgegrove Ltd.,* [2003] 1 W.L.R. 2441. However, plaintiffs did not send service to Marquis's registered address.

obeyed by a plaintiff in a non-English court.

It is undisputed that plaintiffs did not mail service from England, and did not comply with other applicable English civil procedure rules relevant to mail service in English courts. Plaintiffs mailed a summons and complaint prepared by their counsel rather than a "claim form" issued by an English court. They mailed it from an American mailbox instead of an English postbox. They filed no certificate of service in an English court. In sum, in mailing an American complaint from a mailbox in the United States, the plaintiffs did not—and could not—comply with the English rules governing service by "first class post" for suits in English courts.

### C. Purpose of Rule 4(f)(2)(A)

The 1963 Committee Notes accompanying Rule 4(i)(1)(A), the predecessor to Rule 4(f)(2)(A), state that the purpose of the rule is to provide an alternative method of service "that is likely to create least objection in the place of service." *See also Grand,* 988 F.2d at 487; Ronan E. Degnan and Mary Kay Kane, *The Exercise of Jurisdiction Over and Enforcement of Judgments Against Alien Defendants,* 39 Hastings L.J. 799, 840 (1988) ("[T]he approach [of Rule 4(i)(1)(A) ] assures that the receiving state can have no objection to the means of transmitting notice.").

From the exchange between the British Embassy and the United States State Department, it is clear that an interpretation of Rule 4(f)(2)(A) permitting service of process on an English defendant by ordinary first class mail sent from the United States is not "likely to create least objection in the place of service." Rather, this exchange shows us that such an interpretation is likely to create a *substantial,* and in my view entirely justified, "objection in the place of service."

### V. Conclusion

Today's decision will cause mischief at home and unhappiness abroad. I agree with the majority's conclusion that Article 10(a) of the Hague Convention does not "interfere" with service by mail. But I strongly disagree with its conclusion that Rule 4(f)(2)(A) authorizes service of process by international mail. Not only is the existing case law uniform in holding that service by international mail is not authorized under Rule 4(f)(2)(A). There is also no need to depart from this consistent understanding of the rule, for a competent attorney already has ample means of serving process on a foreign defendant under Rule 4(f) without relying on the extraordinary expedient of ordinary international first class mail.