**George C. LEVIN, As Trustee in Reorganization of the Estates of Swan-Finch Oil Corporation, Keta Gas and Oil Company and Swan-Finch Petro Chemical Corporation, Plaintiff,**

**v.**

**RUBY TRADING CORPORATION, Lowell M. Birrell, Herbert A. Birrell, Harry Casper, Lois B. Morrill, Peter Jakobson and Peter Jakobson Corporation, Defendants.**

United States District Court
S. D. New York.
Dec. 22, 1965.

ship of the real property, the subject matter of this action.

The action, commenced in August 1962, seeks to declare invalid as in fraud of the debtor corporations and their creditors various deeds, leases, mortgages and agreements relating to an apartment house, 1050 Park Avenue, New York City, the record title to which at one time was in the name of Ruby Trading Corporation, a defendant herein, allegedly controlled by Lowell Birrell, a central figure in the affairs of the debtor corporations. Herbert Birrell acquired title to the property in 1951 from Ruby Trading Corporation, which he retained until 1963, when he transferred it to Empire Associates, Inc.

With the exception of Herbert Birrell, the movant herein, all other principal defendants who are charged with fraudulent conduct with respect to the property had been served with process or had intervened before the end of 1964.[2] Herbert Birrell has been a resident of Hamilton, Ontario, Canada since 1962, which may explain the lack of earlier effort to serve him. While, as the Court of Appeals has pointed out,[3] jurisdiction could have been obtained at any time to the extent of Herbert Birrell's interest in the real property, such procedure would not have warranted an in personam judgment to recover moneys allegedly wrongfully withdrawn by him from the property.

New York's long-arm statute, effective September 1, 1963,[4] and the 1963 amendments to Rule 4 of the Federal Rules of Civil Procedure paved the way to acquire personal jurisdiction of Herbert Birrell. New York's CPLR, section 302(a) (3) provides that "[a] court may exercise personal jurisdiction over any non-domiciliary * * * as to a cause of action arising from" ownership, use or posses-

Everett A. Eisenberg, New York City, for plaintiff.

Alexander M. Campbell, John C. Lankenau, New York City, appearing specially for defendant Herbert A. Birrell.

WEINFELD, District Judge.

This is a motion by Herbert A. Birrell to dismiss this action as against him for lack of jurisdiction and to quash service of process. It is another chapter in a case which has had the attention of our Court of Appeals on three separate occasions,[1] on the last of which the court ordered the plaintiff reorganization trustee to proceed to trial no later than March 4, 1966 at the risk of termination of the receiver-

1. Levin v. Ruby Trading Corp., 352 F.2d 508 (2d Cir. 1965); Levin v. Ruby Trading Corp., 333 F.2d 592 (2d Cir. 1964); In the Matter of Swan-Finch Oil Corp., 313 F.2d 140 (2d Cir.), cert. denied sub. nom., Jakobson v. Levin, 375 U.S. 813, 84 S.Ct. 44, 11 L.Ed.2d 49 (1963).

2. An unsuccessful attempt was made to serve Ruby Trading Corporation. No attempt has been made to serve a named defendant, Harry Casper, who allegedly held the property for one day between the time of a conveyance to him by Birrell and his reconveyance to Birrell.

3. Levin v. Ruby Trading Corp., 333 F.2d 592, 595 (2d Cir. 1964).

4. See N.Y. CPLR § 10005.

sion of "any real property situated within the state." Rule 4(i) of the Federal Rules provides that "[w]hen the federal or state law * * * authorizes service upon a party not an inhabitant of or found within the state in which the district court is held, and service is to be effected upon the party in a foreign country," such service may be made in any one of five alternative ways, the last of which is "as directed by order of the court."

This latter method was adopted after two previous attempts to serve Birrell under two other alternatives permitted by Rule 4(i) had failed. The first was made on April 29, 1965 when, under Rule 4(i) (1) (D), the clerk, mailed to Birrell's residence at Hamilton, Ontario, Canada the summons, complaint and supplemental complaint by registered mail, return receipt requested. The envelope was returned on May 5 unopened and marked "unclaimed." Then followed, under Rule 4(i) (1) (C), the next attempt, when on July 17 and 18 a Canadian attorney tried but failed to effect personal service upon Birrell, who it now appears was in Alaska. The Canadian attorney advised the plaintiff's attorney that it was unlikely that further efforts at personal service would succeed.

Finally followed the order under which service was made and now challenged by Birrell. This order authorized service by ordinary mail directed to: (1) Birrell at his residence address in Hamilton, Ontario; (2) Yates and Yates, Esqs., his attorneys in Hamilton, Ontario, at their offices there, and (3) Alexander Campbell, Esq., an attorney who had been retained by Birrell relative to the subject matter of the suit, at the attorney's office in Fort Wayne, Indiana.

Birrell, in attacking the service of process upon him, which was effected in conformity with the Court's order, makes three principal contentions. First, he contends that service by ordinary mail is both prohibited by Rule 4(i) (1) (D) and violative of constitutional due process. He argues that since subparagraph (D) of Rule 4(i) (1) authorizes service by mail "requiring a signed receipt," the court's power, whenever issuing an order under subparagraph (E) for service by mail, is circumscribed by subparagraph (D), so that such service must be by registered, and not ordinary, mail.

Subparagraph 4(i) (1) (D) authorizes service by mail without court supervision, and it is for this reason that the double safeguard of mailing by the clerk of the court and a signed receipt was set up.[5] However, in the instance of alternative subparagraph (E), which permits service "as directed by order of the court," the necessary safeguards are determined by the court which, to assure adequacy of notice, may "tailor the manner of service to fit the necessities of a particular case * * *."[6] To adopt Birrell's construction of Rule 4(i) would negate the purpose of the Rule, which was to set up "alternative permissible manners of service that would provide a fair amount of choice and flexibility while assuring that the foreign defendant would get good notice."[7]

The movant's collateral contention that the direction for service by ordinary mail runs afoul of due process also is without merit. Where nonpersonal service is employed, the basic inquiry is whether the method is reasonably calculated, under all the circumstances, to give actual notice to the party whose interests are to be affected by the suit or pro-

5. Notes of Advisory Committee on Rule 4(i) (1) (D) state: "Since the reliability of postal service may vary from country to country, service by mail is proper only when * * * a form of mail requiring a signed receipt is used. An additional safeguard is provided by the requirement that the mailing be attended to by the clerk of the court." The movant herein misreads the foregoing as a restriction upon the power of the court under subparagraph (E).

6. Notes of Advisory Committee to subparagraph (E).

7. Kaplan, Amendments of the Federal Rules of Civil Procedure, 1961–1963 (I), 77 Harv.L.Rev. 601, 635 (1964). Accord, Notes of Advisory Committee to subdivision (i).

ceeding, and to afford him an adequate opportunity to be heard;[8] and the practicalities in a given case are a factor in determining whether constitutional requirements have been satisfied.[9]

At the outset it is noted that the alternative method employed by the plaintiff under subparagraph (D), that is, mailing by registered mail, which the movant so strongly stresses as an effective means of giving notice, proved ineffective in this case when the mail was returned with the notation "unclaimed" to the clerk of the court. This led to the second attempt by means of personal service, which likewise failed and was followed by the order now challenged.

The court, as already noted directed three separate mailings to the defendant and to two different attorneys representing his interests in this litigation. Indeed, short of personal service upon the defendant, it is difficult to suggest any other means more reasonably calculated to bring home to the movant that the suit attacked his interest in the property, and to afford him the opportunity to defend. Yates and Yates were his Canadian counsel and represented him when he was deposed as a witness in this action in March of this year. Moreover, when personal service was attempted at Birrell's residence, the process server was told to get in touch with Yates and Yates, who handled legal matters for Birrell. Alexander Campbell, the other attorney, had not only been retained by Birrell to protect his interest in all matters relating to the property in question, but in addition all the capital stock of Empire Associates, Inc., purportedly now the fee owner of the property, had been pledged to secure the payment of Campbell's fees for legal services.

Finally, a simple but significant fact is that each of the three addressees received the mail with its contents in ordinary course,[10] and no claim is made to the contrary. Under all the circumstances, the service of process by ordinary mail upon those named in the court's order was amply sufficient to satisfy due process requirements.

Birrell next contends that New York's CPLR, section 302 does not authorize out of state service of process upon one who was a domiciliary of New York State at the time of the commission of the acts which gave rise to the cause of action, but thereafter became, and at the time of attempted service was, a nondomiciliary. Birrell's alleged fraudulent transactions relating to the Park Avenue apartment upon which this suit is based were committed within this state during and prior to March 1962 when he was a New York resident. Soon after, however, he moved to Canada, where he has since resided without any apparent intention of returning to New York.

Birrell rests his argument upon an asserted analogy between CPLR, section 302 and sections 253 and 254 of the New York Vehicle and Traffic Law, McKinney's Consol.Laws, c. 71. Section 253 authorized service of process on nonresident motorists operating vehicles within New York State. However, this section did not authorize service upon one who had been a New York resident when the acts occurred out of which the suit arose, but who later became a non-

8. See McGee v. International Life Ins. Co., 355 U.S. 220, 224, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314–315, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

9. See Walker v. City of Hutchinson, 352 U.S. 112, 115, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314–315, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

10. That actual receipt of notice is a fact of significance, see Rovinski v. Rowe, 131 F.2d 687, 689 (6th Cir. 1942); Frasca v. Eubank, 24 F.R.D. 268, 270 (E.D.Pa. 1959) (dictum). See also, Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940); SEC v. Briggs, 234 F.Supp. 618, 623 (N.D. Ohio 1964). Cf. Hanna v. Plumer, 380 U.S. 460, 463 n. 1, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (dictum).

resident.[11] In consequence, section 254 was enacted to fill the gap by providing for service upon such defendants.[12] Birrell argues that in view of the origin and reason for section 254 of the Vehicle and Traffic Law, the Legislature, by failing to include a comparable provision in CPLR, section 302, manifested a purpose that section 302 should not apply to domiciliaries who leave the state and become nondomiciliaries.

Birrell's position is without support. CPLR, section 302 reflected a purpose of the New York Legislature to take advantage "of the Supreme Court's broadening of the bases for the exercise of personal jurisdiction over nondomiciliaries." [13] Its frame of reference was the Illinois "long-arm statute," [14] not New York's Vehicle and Traffic Law. Moreover, the rationale underlying the construction given section 253 of that law is not applicable today. Service pursuant to section 253 rested upon a nonresident's consent implied from his use of New York's highways. The consent of a resident could not be implied from section 253, since the section did not so provide.[15] Section 254 supplied the deficiency. CPLR, section 302 rests upon an entirely different rationale—namely that a person having certain minimal contacts with a state is subject to the personal jurisdiction of the courts of that state. No doctrine of consent, express or implied, underlies this jurisdictional concept, as the New York Court of Appeals has acknowledged.[16] It is settled that the ownership of real property within a state is a sufficient contact upon which to predicate jurisdiction.[17]

Finally, movant's construction of section 302 would create a jurisdictional no man's land. Thus, a nondomiciliary having the requisite minimal contacts with New York by reason of having committed acts giving rise to a cause of action would be subject to in personam jurisdiction as to that cause of action; a domiciliary committing the same acts would, of course, also be subject to in personam jurisdiction.[18] But the domiciliary, according to movant's view, could defeat jurisdiction by leaving the state and establishing a new domicile. Such a construction of section 302 would be contrary to its clear purpose.[19] The very language of the section states that "[a] court may exercise personal jurisdiction over any nondomiciliary * * * as to a cause of action arising from * * * the acts enumerated in this section, in the same manner as if he were a domiciliary * * *." The language "any nondomiciliary" is broad enough to include all nondomiciliaries no matter when they become such, provided that the acts out of which the cause of action arises were committed within the state and reflect the requisite minimal contacts. It is a defendant's acts and conduct, not his domicile, which constitute the hard core

11. See Kurland v. Chernobil, 260 N.Y. 254, 257, 183 N.E. 380 (1932).

12. See McLaughlin, 1964 Supplementary Practice Commentary to CPLR § 302, in McKinney's Consolidated Laws of New York Annotated (1965 pocket part).

13. Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 452, 261 N.Y.S.2d 8, 14, 209 N.E.2d 68, 72 (1965).

14. Ibid; 1 Weinstein, Korn & Miller, New York Civil Practice ¶ 302.01 (1963); Note on Legislative Studies and Reports to CPLR § 302, in McKinney's Consolidated Laws of New York Annotated (1963).

15. Cf. Kurland v. Chernobil, 260 N.Y. 254, 257, 183 N.E. 380 (1932).

16. See Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 454 n. 4, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). See also, Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 586–587 (2d Cir. 1965); Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 320 (2d Cir. 1964); 1 Weinstein, Korn & Miller, New York Civil Practice ¶ 302.01 (1963).

17. See People ex rel. Hoagland v. Streeper, 12 Ill.2d 204, 145 N.E.2d 625, 630 (1957); Tebedo v. Nye, 45 Misc.2d 222, 256 N.Y.S.2d 235 (Sup.Ct.1965); Dubin v. City of Philadelphia, 34 Pa.Dist. & Co. R. 61 (C.P.1938); Goodrich, Conflict of Laws 118 (4th ed. 1964).

18. See N.Y. CPLR § 313.

19. See O'Connor v. Wells, 43 Misc.2d 1075, 252 N.Y.S.2d 861, 863 (Sup.Ct.1964).

of the jurisdictional reach.[20] This is underscored by the heading of section 302 (a), which speaks of the "acts which are the basis of jurisdiction." To accept defendant's construction would frustrate the clear purpose of the law. While New York's highest court has not considered the question,[21] those state courts which have reach the same conclusion.[22]

The defendant's final attack rests upon the fact that he was not served with process until three years after the commencement of suit and that in the meantime, as already noted, on July 1, 1963 Rule 4 of the Federal Rules was amended to permit resort to state law procedures to achieve service on nondomiciliaries and to provide new means of service on foreign domiciliaries, while on September 1, 1963 New York's long-arm statute, CPLR, section 302 became effective. The defendant, recognizing that, absent prejudicial factors, section 302,[23] as well as amended Rule 4,[24] has been held applicable to actions based upon transactions occurring prior to their effective date, argues that to apply them retroactively to him is unfair and prejudicial in that burdens are now imposed upon him which did not exist before the amendments came into being. Specifically, he urges that amended Rule 4 be held inapplicable by virtue of Rule 86(e) of the Federal Rules, which provides that the amendments apply unless they "would work injustice." [25]

In deciding whether to apply Rule 4(i) and amended Rule 4(e), the court must consider not only the alleged injustice to Birrell if he is subjected to jurisdiction, but also any injustice which will be visited upon the plaintiff trustee and the interests he represents if the jurisdictional attack is sustained and Birrell is not called upon to defend. A party is not to be denied his day in court to prove his claim against one allegedly liable to him except upon a substantial showing of injustice to the adversary.[26] Birrell has received fair notice of this suit, of which he has been aware since its commencement. Even if he would be slightly inconvenienced by being required to defend in this court at this time, mere

20. Tebedo v. Nye, 45 Misc.2d 222, 256 N.Y.S.2d 235, 236 (Sup.Ct.1965). Cf. Hempstead Medical Arts Co. v. Willie, N.Y.L.J., Dec. 9, 1963, p. 18, col. 6, Sup. Ct., 1963.

21. If it had, its decision would, of course, bind this court. See West v. American Telephone & Telegraph Co., 311 U.S. 223, 236, 61 S.Ct. 179, 85 L.Ed. 139 (1940); Wichita Royalty Co. v. City Nat'l Bank, 306 U.S. 103, 107, 59 S.Ct. 420, 83 L.Ed. 515 (1939).

22. See Tebedo v. Nye, 45 Misc.2d 222, 256 N.Y.S.2d 235 (Sup.Ct.1965); O'Connor v. Wells, 43 Misc.2d 1075, 252 N.Y.S. 2d 861, 863 (Sup.Ct.1964). While these lower court decisions are not binding on this court, they are entitled some weight. See King v. Order of United Commercial Travelers, 333 U.S. 153, 159–161, 68 S.Ct. 488, 92 L.Ed. 608 (1948); Hausman v. Buckley, 299 F.2d 696, 702 n. 10, 93 A.L.R.2d 1340 (2d Cir.), cert. denied, 369 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286 (1962); Hart & Wechsler, The Federal Courts & the Federal System 628–30 (1953). Cf. Cooper v. American Airlines, Inc., 149 F.2d 355, 359, 162 A.L.R. 318 (2d Cir. 1945). But see Robles v. Folsom, 239 F.2d 562 (2d Cir. 1956), cert. denied, 353 U.S. 960, 77 S.Ct. 869, 1 L.Ed.2d 911 (1957).

23. See N.Y. CPLR § 10003; Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 452–454, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965); Simonson v. International Bank, 14 N.Y.2d 281, 290, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1964). Cf. McGee v. International Life Ins. Co., 355 U.S. 220, 224, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

24. See Fed.R.Civ.P. 86(e); Davis v. Gahan, 227 F.Supp. 867, 869 (S.D.N.Y. 1964). See also, Graham v. Pennsylvania R.R., 119 U.S.App.D.C. 335, 342 F.2d 914 (D.C.Cir.1964), cert. denied, 381 U.S. 904, 85 S.Ct. 1446, 14 L.Ed.2d 286 (1965).

25. See also, Bramley v. Monarca Cia. Naviera S.A., 34 F.R.D. 479 (E.D.Pa. 1964).

26. Cf. Demeulenaere v. Rockwell Mfg. Co., 31 F.R.D. 575, 578 (S.D.N.Y.1960), aff'd, 312 F.2d 209 (2d Cir. 1962), cert. denied, 374 U.S. 813, 83 S.Ct. 1704, 10 L.Ed. 2d 1036 (1963). Accord, Lyford v. Carter, 274 F.2d 815 (2d Cir. 1960). See also, Gill v. Stolow, 240 F.2d 669, 670 (2d Cir. 1957).

inconvenience is not enough to tip the balance of justice in his favor.[27]

The essential thrust of the claim of injustice is that Birrell will now have to face the burdens of defending this action—a burden no different from that visited upon any other litigant. There is a vague suggestion that the three-year delay in the service of process is prejudicial because the memory of witnesses may have been dimmed and records may no longer be available, but this claim is without factual support. The fact is that despite the delay, which may have been occasioned by movant's change of residence beyond the jurisdiction of this court, the litigation has been in an active state—if not in a state of turmoil. The various defendants, including the movant, have been examined and their depositions taken. Their interests are not antagonistic to those of the movant; on the contrary, since they resist plaintiff's attack upon the various transfers and the charges of fraud, they are allied with Birrell. Thus, not only is their testimony preserved, but it is equally clear that whatever records are of significance are available. The defendant does not suggest, much less demonstrate, that additional depositions or other pretrial steps are required adequately to protect his interests. Even so, there is ample time between now and March 4, 1966, the outside trial date set by the Court of Appeals.[28] Moreover, the trial court still retains discretion to consider any application for postponement.[29]

The motion is denied in all respects.

27. Cf. McGee v. International Life Ins. Co., 355 U.S. 220, 224, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

28. See Levin v. Ruby Trading Corp., 352 F.2d 508 (2d Cir. 1965).

29. Id., at 509 n. 3.