Ronald B. BROCKMEYER; Eromedia, Ltd., Plaintiffs–Appellees,

v.

David C. MAY, Defendant,

v.

Marquis Publications, Ltd., Defendant–Appellant.

No. 02–56283.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 2003.

Filed March 24, 2004.

Withdrawn June 28, 2004.

Filed Aug. 31, 2004.

Albert S. Israel, Fields Israel & Binning, Long Beach, CA, for the defendant-appellant.

Dennis H. Cavanaugh, Piliero Goldstein Kogan & Mitchell, New York, NY, for the plaintiffs-appellees (former counsel).

Before SILVERMAN, W. FLETCHER, and RAWLINSON, Circuit Judges.

WILLIAM A. FLETCHER, Circuit Judge:

Plaintiffs in this case attempted to serve process on an English defendant by using ordinary first class mail to send a summons and complaint from the United States to England. We join the Second Circuit in concluding that the Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention," or the "Convention") does not pro-

hibit—or, in the words of the Convention, does not "interfere with"—service of process by international mail. But this conclusion tells us only that the Hague Convention does not prohibit such service. For service by international mail to be effective in federal court, it must also be affirmatively authorized by some provision in federal law.

Federal Rule of Civil Procedure 4 governs service of process in federal district court. In this case, after determining that the Hague Convention does not prohibit service by international mail, the necessary next step is to analyze Rule 4(f) to determine whether it affirmatively authorizes such service. The plaintiffs' attempted service fails because they failed to follow the requirements of that rule. We therefore reverse and remand to the district court with instructions to vacate the judgment.

## I. Background: Plaintiffs' Attempts to Serve Process

Ronald B. Brockmeyer is the owner of the trademark <<O>>, under which he publishes and distributes adult entertainment media and novelties. On August 3, 1998, Brockmeyer and his company, Eromedia, filed suit against Marquis Publications, Ltd. ("Marquis") and several other defendants in federal district court in the Southern District of New York, alleging trademark infringement and various state-law causes of action. Marquis is a company registered under British law. Plaintiffs' counsel made two attempts to serve on Marquis.

Plaintiffs' counsel made his first attempt on October 7, 1998. He sent the summons and complaint, together with a request for waiver of service, by ordinary first class mail to a post office box in England. Marquis did not respond.

On April 5, 1999, the district court in New York transferred the suit to the Central District of California. On October 6, 1999, the district court in California entered an order to show cause ("OSC") why the suit should not be dismissed for lack of prosecution. Plaintiffs were required to respond to the OSC by October 25, 1999.

Plaintiffs' counsel made his second attempt at service four days before the OSC deadline, on October 21, 1999. This time, instead of sending the summons and complaint together with a request for waiver of service, he sent only the summons and complaint. He sent them by first class mail to the same post office box in England to which he had previously sent the request for waiver. Marquis still did not respond.

Default was entered by the court clerk against several defendants (not including Marquis) on November 24, 1999. Default was entered against Marquis a year later, on November 8, 2000. On February 22, 2002, the district court entered a default judgment of $410,806.12, plus attorneys' fees and costs, against Marquis and two German defendants.

The German defendants moved to set aside the default judgment against them. On June 6, 2002, the district court granted the motion on the ground that they had not been properly served under the Hague Convention and German law. The court ordered plaintiffs to serve the German defendants properly within 90 days or face dismissal. The district court subsequently gave plaintiffs a two-month extension until November 4, 2002. Seven days before the expiration of the extended deadline, plaintiffs' counsel finally submitted documents to the German Central Authority for service. The Central Authority rejected the documents the same day for failure to comply with German law. Almost two months later, plaintiffs' counsel resubmit-

ted documents to the German Central Authority. Nothing in the record indicates whether these resubmitted documents complied with German law. On January 2, 2003, the district court dismissed the suit against the German defendants for failure to serve process within the time allowed under the extended deadline. Plaintiffs have not appealed that dismissal.

Marquis moved independently to set aside the default judgment against it. Among other things, Marquis contended that international mail service must be made by certified or registered mail. On June 26, 2002, the district court denied Marquis's motion, holding that plaintiffs' second attempt at service had been successful. It ruled that mail service is not forbidden by the Hague Convention, and that service on an English defendant by ordinary international first class mail is proper.

Marquis appeals the district court's denial of its motion to set aside plaintiffs' default judgment. We have jurisdiction pursuant to 29 U.S.C. § 1291. Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4. 4A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1083 (3d ed. 2002 & Supp. 2003); *see also Butcher's Union Local No. 498 v. SDC Inv., Inc.,* 788 F.2d 535, 538 (9th Cir.1986).

## II. Discussion

### A. The Hague Convention

■ The resolution of this appeal depends on whether Marquis was properly served. Because service of process was attempted abroad, the validity of that service is controlled by the Hague Convention, to the extent that the Convention applies. *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 705, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988)

("[C]ompliance with the Convention is mandatory in all cases to which it applies.").

The Hague Convention, ratified by the United States in 1965, regularized and liberalized service of process in international civil suits. The primary means by which service is accomplished under the Convention is through a receiving country's "Central Authority." The Convention affirmatively requires each member country to designate a Central Authority to receive documents from another member country. *See* Hague Convention, art. 2. The receiving country can impose certain requirements with respect to those documents (for example, that they be translated into the language of that country). *See id.,* art. 5. If the documents comply with applicable requirements, the Convention affirmatively requires the Central Authority to effect service in its country. *See id.,* arts. 4 & 5.

■ The Convention also provides that it does not "interfere with" other methods of serving documents. Article 10(a) of the Convention recites:

> Provided the State of destination does not object, the present Convention shall *not interfere with—*
>
> (a) the freedom to *send* judicial documents, by postal channels, directly to persons abroad.

(Emphasis added.) American courts have disagreed about whether the phrase "the freedom to *send* judicial documents" in Article 10(a) includes within its meaning the freedom to *serve* judicial documents.

One line of cases follows *Bankston v. Toyota Motor Corp.,* 889 F.2d 172, 173–74 (8th Cir.1989). In *Bankston,* the Eighth Circuit held that the meaning of the word "send" in Article 10(a) does not include "serve"; that is, it held that "send" permitted the sending of judicial documents by

mail, but only after service of process was accomplished by some other means. In *Nuovo Pignone v. Storman Asia M/V,* 310 F.3d 374, 384 (5th Cir.2002), the Fifth Circuit similarly held that a strict reading of the Hague Convention did not permit an Italian plaintiff who filed suit in the United 'States to serve an Italian defendant in Italy by Federal Express.

A second line of cases follows *Ackermann v. Levine,* 788 F.2d 830, 838 (2d Cir.1986), in which the Second Circuit approved a German plaintiff's service of process by mail, when the plaintiff filed suit in Germany and served by registered mail a defendant in the United States. *Ackermann* relied primarily on the purpose and history of the convention to interpret the word "send" in Article 10(a) to include the meaning "serve." *See id.*

Whether service by mail is permitted under the Hague Convention is an open question in our circuit. We briefly discussed Article 10(a) in *Lidas, Inc. v. United States,* 238 F.3d 1076, 1084 (9th Cir. 2001), but we did not confront the question whether Article 10(a) allows service by mail. District courts within our circuit are split. *Compare R. Griggs Group Ltd. v. Filanto Spa,* 920 F.Supp. 1100, 1104–05 (D.Nev.1996) ("send" includes "serve"); *Meyers v. ASICS Corp.,* 711 F.Supp. 1001, 1007–08 (C.D.Cal.1989) (same); *and Newport Components v. NEC Home Electronics,* 671 F.Supp. 1525, 1541–42 (C.D.Cal. 1987) (same) *with Anbe v. Kikuchi,* 141 F.R.D. 498, 500 (D.C.Hawai'i 1992) ("send" does not include "serve") *and Mateo v. M/S Kiso,* 805 F.Supp. 792, 796 (N.D.Cal. 1992) (same).

Today we join the Second Circuit in holding that the meaning of "send" in Article 10(a) includes "serve." *See Ackermann,* 788 F.2d at 838. In so doing, we also join the essentially unanimous view of other member countries of the Hague Convention. *See, e.g.,* Case C–412/97, *E.D. Srl. v. Italo Fenocchio,* 1999 E.C.R. I–3845, [2000] C.M.L.R. 855 (Court of Justice of the European Communities) ("Article 10(a) of [the Hague Convention] allows service by post."); *Integral Energy & Envtl. Eng'g Ltd. v. Schenker of Canada Ltd.,* (2001) 295 A.R. 233, 2001 WL 454163 (Alberta Queens Bench) ("Article 10(a) of the Hague Convention provides that if the state of destination does not object, judicial documents may be served by postal channels"), *rev'd on other grounds,* (2001) 293 A.R. 327; *R. v. Re Recognition of an Italian Judgment,* [2002] I.L.Pr. 15, 2000 WL 33541696 (Thessaloniki Court of Appeal, Greece) ("It should be noted that the possibility of serving judicial documents in civil and commercial cases through postal channels ... is envisaged in Article 10(a) of the Hague Convention.").

We agree with the Second Circuit that this holding is consistent with the purpose of the Convention to facilitate international service of judicial documents. *See* Hague Convention, art.1 ("[T]he present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for *service* abroad.") (emphasis added); *see also* 1 Moore's Federal Practice § 4.52[2][d] (stating that "it comports with the broad purpose of the Hague Convention" to construe "send" to mean "serve").

Commentaries on the history of negotiations leading to the Hague Convention further indicate that service by mail is permitted under Article 10(a). According to the official Rapporteur's report, the first paragraph of Article 10 of the draft Convention, which "except for minor editorial changes" is identical to Article 10 of the final Convention, was intended to permit service by mail. *See* 1 Bruno A. Ristau, *International Judicial Assistance* § 4–3–

5, at 204–05 (2000) (quoting the Service Convention Negotiating Document) (translated from French by Ristau). A "Handbook" published by the Permanent Bureau of the Hague Convention, which summarizes meetings of a "Special Commission of Experts," states that to interpret Article 10(a) not to permit service by mail would "contradict what seems to have been the implicit understanding of the delegates at the 1977 Special Commission meeting, and indeed of the legal literature on the Convention and its predecessor treaties." Permanent Bureau of the Hague Convention, *Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters* 44 (1992). As further evidence of the understanding of the parties at the time the Hague Convention was signed, the United States delegate to the Hague Convention reported to Congress that Article 10(a) permitted service by mail. *See* S. Exec. R. No. 6, at 13 (1967) (statement by Philip W. Amram).

The United States government, through the State Department, has specifically disapproved the Eighth Circuit's holding in *Bankston.* On March 14, 1991, the Deputy Legal Advisor of the State Department wrote a letter to the Administrative Office of the United States Courts.[1] After discussing Article 10(a) and noting that Japan did not object to the use of postal channels under Article 10(a), the letter concluded:

We therefore believe that the decision of the Court of Appeals in *Bankston* is incorrect to the extent that it suggests that the Hague Convention does not permit as a method of service of process the sending of a copy of a summons and complaint by registered mail to a defendant in a foreign country.

The letter also emphasized that, "while courts in the United States have final authority to interpret international treaties for the purposes of their application as law of the United States, they give great weight to treaty interpretations made by the Executive Branch." *See also United States v. Lombera–Camorlinga,* 206 F.3d 882, 887. (9th Cir.2000) (en banc).

State Department circulars also indicate that service by mail is permitted in international civil litigation. *See, e.g.,* U.S. Dep't of State, *Circular: Service of Process Abroad, in Selected Materials in Int'l Litig. and Arbitration,* 688 PLI/Lit. 777, 1021 (2003). The State Department circular tailored to the United Kingdom specifies that mail service by international registered mail is allowed. U.S. State Dep't, *Judicial Assistance in the United Kingdom (England, Scotland, Wales, and Northern Ireland), in Selected Materials in Int'l Litig. & Arbitration,* 689 PLI/Lit. 13, 325 (2003).

The purpose and history of the Hague Convention, as well as the position of the U.S. State Department, convince us that "send" in Article 10(a) includes "serve." We therefore hold that the Convention permits—or, in the words of the Convention, does not "interfere with"—service of process by international mail, so long as the receiving country does not object.

B. Rule 4(f): "Service Upon Individuals in a Foreign Country"

Article 10(a) does not itself affirmatively authorize international mail service. It merely provides that the Convention "shall not interfere with" the "freedom" to use postal channels if the "State of destina-

1. Letter from Alan J. Kreczko, U.S. Dep't of State Deputy Legal Adviser, to the Admin. Office of the U.S. Courts (March 14, 1991), *quoted in* U.S. Dep't of State Op. Regarding the *Bankston* Case, 30 I.L.M. 260 (1991).

tion" does not object to their use. As the Rapporteur for the Convention wrote in explaining Article 10(a), "It should be stressed that in permitting the utilization of postal channels, ... the draft convention did not intend to pass on the validity of this mode of transmission under the law of the forum state: *in order for the postal channel to be utilized, it is necessary that it be authorized by the law of the forum state.*" 1 Ristau § 4–3–5, at 205 (emphasis added) (quoting Service Convention Negotiating Document); *see also id.* at 162 ("Even though a contracting state may not object to methods of service of foreign judicial documents in its territory in a manner other than as provided for in the Convention ... *it is still necessary that the law of the state where the action is pending authorize the particular method of service employed.*") (emphasis added).

In other words, we must look outside the Hague Convention for affirmative authorization of the international mail service that is merely not forbidden by Article 10(a). Any affirmative authorization of service by international mail, and any requirements as to how that service is to be accomplished, must come from the law of the forum in which the suit is filed.

Federal Rule of Civil Procedure 4(h)(2) directs that service on a foreign corporation, if done outside of the United States, shall be effected "in any manner prescribed for individuals by subdivision [4](f) except personal delivery as provided in paragraph (2)(C)(i) thereof," unless a waiver of service has been obtained and filed. No waiver of service under Rule 4(d) was obtained in this case. To determine whether service of process was proper, we therefore look to Federal Rule of Civil Procedure 4(f). As will be seen, no part of Rule 4(f) authorizes service by ordinary international first class mail.

### 1. Rule 4(f)(1)

■ Rule 4(f)(1) authorizes service by those methods of service authorized by international agreements, including the Hague Convention. It provides:

(f) ... Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed ... may be effected in a place not within any judicial district of the United States:

(1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[.]

The Hague Convention affirmatively authorizes service of process through the Central Authority of a receiving state. Rule 4(f)(1), by incorporating the Convention, in turn affirmatively authorizes use of a Central Authority. However, Rule 4(f)(1) does not go beyond means of service affirmatively authorized by international agreements. It is undisputed that Brockmeyer did not use either the Central Authority under the Hague Convention or any other internationally agreed means for accomplishing service. Rule 4(f)(1), therefore, does not provide a basis for service in this case.

### 2. Rule 4(f)(2)(C)(ii)

Explicit, affirmative authorization for service by international mail is found only in Rule 4(f)(2)(C)(ii) (previously Rule 4(i)(1)(D)). This rule authorizes service abroad by mail for which a signed receipt is required, when such mail is addressed and mailed by the clerk of the federal district court in which the suit is filed. It provides:

(f) [S]ervice ... may be effected in a place not within any judicial district of the United States:

\* \* \*

(2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:

\* \* \*

(C) unless prohibited by the law of the country, by

\* \* \*

(ii) *any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served* [.]

(Emphasis added.)

It is undisputed that the plaintiffs in this case did not comply with the requirements of Rule 4(f)(2)(C)(ii), as notice was not sent by the clerk of the district court, nor by a form of mail requiring a signed receipt. Rule 4(f)(2)(C)(ii) therefore does not provide a basis for service in this case.

### 3. Rule 4(f)(3)

Rule 4(f)(3) (previously Rule 4(i)(1)(E)) affirmatively authorizes the federal district court to direct any form of service that is not prohibited by an international agreement. It provides:

(f) [S]ervice ... may be effected in a place not within any judicial district of the United States:

\* \* \*

*(3) by other means not prohibited by international agreement as may be directed by the court.*

(Emphasis added.)

The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the "sound discretion of the district court." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir.2002) (permitting service on a foreign corporation by regular mail and by e-mail, when authorized by the district court). The classic case is *Levin v. Ruby Trading Co.*, 248 F.Supp. 537 (S.D.N.Y.1965), in which the court authorized service abroad by ordinary mail under previous Rule 4(i)(1)(E), which was identical to current Rule 4(f)(3). In *Levin*, the court contrasted Rule 4(i)(1)(D) (now Rule 4(f)(2)(C)(ii)) with Rule 4(i)(1)(E), observing that Rule 4(i)(1)(D) "authorizes service by mail without court supervision, and it is for this reason that the double safeguard of mailing by the clerk of the court and a signed receipt was set up." *Id.* at 540. The court held that it could nonetheless authorize service by ordinary mail under Rule 4(i)(1)(E), because "the necessary safeguards are determined by the court[,] which to assure adequacy of notice, may 'tailor the manner of service to fit the necessities of a particular case....'" *Id.* (quoting Fed.R.Civ.P. 4(i)(1)(E) (1963) Advisory Committee Note). Other courts have widely accepted *Levin*'s reasoning. *See, e.g., Rio Props.*, 284 F.3d at 1016 (citing *Levin* ); *Int'l Controls Corp. v. Vesco*, 593 F.2d 166, 175 n. 4 (2d Cir.1979) (same).

Courts have authorized a variety of alternative methods of service abroad under current Rule 4(f)(3) and former Rule 4(i)(1)(E), including not only ordinary mail and e-mail but also publication and telex. *Rio Props.*, 284 F.3d at 1016 (citing *SEC v. Tome*, 833 F.2d 1086, 1094 (2d Cir.1987) (affirming district court's authorization of service of process by publication); *Int'l Controls Corp.*, 593 F.2d at 176 (affirming district court's authorization of service of process by ordinary mail to last known address); *Forum Fin. Group v. President, Harvard Coll.*, 199 F.R.D. 22, 23–24 (D.Me.2001) (authorizing service by certified mail to defendant's attorney); *Smith v. Islamic Emirate*, 2001 WL 1658211, at

*2–*3 (S.D.N.Y. Dec.26, 2001) (authorizing service of process by publication on Osama bin Laden and al-Qaeda); *Broadfoot v. Diaz (In re Int'l Telemedia Assoc.)*, 245 B.R. 713, 719–20 (Bankr.N.D.Ga.2000) (authorizing service via facsimile, ordinary mail, and email); *Levin*, 248 F.Supp. at 541–44 (S.D.N.Y.1965) (employing service by ordinary mail)). However, in *Rio* (and in all the cases it cites as applying Rule 4(f)(3)), plaintiffs are required to take a step that the plaintiffs in this case failed to take: They must obtain prior court approval for the alternative method of serving process. Rule 4(f)(3) thus is of no use to plaintiffs in this case.

### 4. Rule 4(f)(2)(A)

■ Because it is undisputed in this case that the plaintiffs neither effected service under the Hague Convention or other international agreement in accordance with Rule 4(f)(1), nor effected service by registered mail by the clerk of the court in accordance with the requirements of Rule 4(f)(2)(C)(ii), nor obtained a court order in accordance with Rule 4(f)(3), the only remaining section on which plaintiffs can conceivably rely is Rule 4(f)(2)(A). Rule 4(f)(2)(A) (previously Rule 4(i)(1)(A)) affirmatively authorizes service by means used in the receiving country for service in an action in its courts of general jurisdiction. As we read Rule 4(f)(2)(A), such means do not include service by international mail.

Rule 4(f)(2)(A) provides:

(f) [S]ervice ... may be effected in a place not within any judicial district of the United States:

\* \* \*

(2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:

*(A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction [.]*

(Emphasis added.) The district court held that service was proper because the United Kingdom allows service for domestic suits in that country by both ordinary and registered post. A number of factors counsel against reading Rule 4(f)(2)(A) to authorize service by international mail, however.

First, the common understanding of Rule 4(f)(2)(A) is that it is limited to personal service. A well-known example of service under Rule 4(f)(2)(A) is "substituted service in Italy by delivery to the concierge of the building where the person to be served lives, as long as the method of service is likely to give the actual notice required by United States due process concepts." Gary N. Horlick, *A Practical Guide to Service of United States Process Abroad*, 14 Int'l Law. 637, 640 (1980) (interpreting previous Rule 4(i)(1)(A) (1963)). Consistent with this example, courts have applied Rule 4(f)(2)(A) to approve personal service carried out in accordance with foreign law. *See, e.g., Supra Medical Corp. v. McGonigle*, 955 F.Supp. 374, 383–84 (E.D.Pa.1997); *Cosmetech International, LLC v. Der Kwei Enterprise*, 943 F.Supp. 311, 316 (S.D.N.Y.1996).

Another reason to read Rule 4(f)(2)(A) not to authorize service by international mail is the explicit mention of international registered mail in Rule 4(f)(2)(C)(ii), considered above, and the absence of any such mention in Rule 4(f)(2)(A). Indeed, the Advisory Committee Note to Rule 4(i)(1)(D), Rule 4(f)(2)(C)(ii)'s nearly identical predecessor, stated that "service by mail is proper *only* when it is addressed to

the party to be served and a form of mail requiring a signed receipt is used." Fed. R.Civ.P. 4(i)(1)(D) (1963) Advisory Committee Note (emphasis added).[2]

A further reason to read Rule 4(f)(2)(A) not to authorize service on foreign defendants by international mail to England—and, in particular, by ordinary international first class mail—is found in an exchange between the British government and the United States Department of State in 1991, in which the British objected to a then-proposed revision to Federal Rule of Civil Procedure 4. *See* 127 F.R.D. 266–84 (1989); 146 F.R.D. 515–16 (1992). As amended, this proposal eventually became what is now Rule 4(d), authorizing a plaintiff to request a waiver of service.

Current Rule 4(d) allows a plaintiff to send a summons and complaint by ordinary first class mail, with a request for waiver of service. If the defendant agrees to waive service, the defendant's waiver has the same effect as actual service. Waiver of service under Rule 4(d) is valid for both domestic and foreign defendants. As originally proposed in 1989, Rule 4(d) would have assessed costs incurred in effecting service against all defendants who failed to waive service, including defendants outside the United States. *See* 127 F.R.D. 271–72. The British government strongly objected to assessment of costs against non-waiving defendants living in the United Kingdom. *See* Letter from Edwin D. Williamson, Legal Adviser, U.S. Dep't of State, to Chief Justice Rehnquist (April 19, 1991) ("Williamson letter"). The British Embassy transmitted to the State Department a diplomatic note expressing its objection, which the State Department in turn forwarded to Chief Justice Rehnquist.

The diplomatic note stated, in relevant part:

The proposed new paragraph (d)(2) of Rule 4 would impose on a defendant who has received notice of the commencement of the action a duty to waive service of the summons. Inasmuch as this procedure, which would coerce a waiver of service of the summons, would be equally applicable to United Kingdom citizens resident in the United Kingdom, the British Government would object to it. The waiver system would conflict with the Hague Service Convention, and it would be oppressive, since agreement would be elicited under the threat of the proposed sanction in costs....

.... [T]he British Government would object to the proposed waiver system for commencing proceedings against those resident in the United Kingdom. The proposed system would, moreover, run contrary to the public policy of the United Kingdom, which is that litigation affecting persons resident in the United Kingdom and commenced in foreign jurisdictions should be properly documented in public form.

Williamson letter, at 2–3 (enclosing U.K. Embassy Note No. 63).

The Supreme Court returned the proposal to the Civil Rules Advisory Committee for further study "in the light of various comments that had been received, most notably from the British Embassy." 146 F.R.D. 515 (1992) (Excerpt from the Report of the Judicial Conference Committee on Rules of Practice and Procedure). In response, the Advisory Committee revised the proposed rule to eliminate the

---

**2.** Rule 4(i)(1)(D) provided: "When service is to be effected upon the party in a foreign country, it is also sufficient if service of the summons and complaint is made ... (d) by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served."

provision assessing costs of service against foreign defendants that decline to waive service. *See id.* at 515–16; *see also* Fed. R.Civ.P. 4(d)(2) (1993). The Committee specifically explained that its revision addressed concerns raised by the British government. *See* 146 F.R.D. 521 (Attachment B to letter to Hon. Robert E. Keeton, Chairman, May 1, 1992).

The objection of the British government to the proposed rule makes sense only if the British government understood Rule 4(f) not to permit service by ordinary, international first class mail against a defendant in England. This is so because if Rule 4(f)(2)(A) had authorized service by international first class mail, a plaintiff would never need to send a request for waiver of service by international first class mail. The plaintiff would simply *effect service* by international first class mail.

The purpose of Rule 4(f)(2)(A) supports our interpretation of the exchange between the British Embassy and the State Department and our conclusion that the rule does not authorize ordinary international mail service to England. According to the 1963 Committee Notes accompanying Rule 4(i)(1)(A), the predecessor to Rule 4(f)(2)(A), the purpose of the Rule is to provide an alternative method of service "that is likely to create least objection in the place of service." *See also* Ronan E. Degnan and Mary Kay Kane, *The Exercise of Jurisdiction Over and Enforcement of Judgments Against Alien Defendants*, 39 Hastings L.J. 799, 840 (1988) ("[T]he approach [of Rule 4(i)(1)(A)] assures that the receiving state can have no objection to the means of transmitting notice."). From the exchange, it is clear that an interpretation of Rule 4(f)(2)(A) permitting service of process on an English defendant by ordinary first class mail sent from the United States is not "likely to create least objec-tion in the place of service." Rather, this exchange shows us that such an interpretation is likely to create a substantial objection.

Finally, we have found no cases upholding service of process by international mail under Rule 4(f)(2)(A). Rather, there are a number of cases *rejecting* service of process by international mail under that rule. *See, e.g., Prewitt Enters. v. OPEC*, 353 F.3d 916, 925 (11th Cir.2003) (rejecting plaintiff's argument that Rule 4(f)(2)(A) authorized service of process on OPEC by international registered mail sent to Austria); *Res. Ventures, Inc. v. Res. Mgmt. Int'l*, 42 F.Supp.2d 423, 430 (D.Del.1999) (holding that service of process by international registered mail to Indonesia was not an appropriate method of service under Rule 4(f)(2)(A)); *Dee–K Enters. v. Heveafil Sdn. Bhd.*, 174 F.R.D. 376, 378–79 (E.D.Va.1997) (holding that rule 4(f)(2)(A) was inapplicable to authorize service of process by international mail to Indonesia or Malaysia).

We therefore conclude, along with the other courts that have considered the question, that Rule 4(f)(2)(A) does not authorize service of process by ordinary first class international mail.

### Conclusion

Today we join the Second Circuit in holding that the Hague Convention allows service of process by international mail. At the same time, we hold that any service by mail in this case was required to be performed in accordance with the requirements of Rule 4(f). Service by international mail is affirmatively authorized by Rule 4(f)(2)(C)(ii), which requires that service be sent by the clerk of the court, using a form of mail requiring a signed receipt. Service by international mail is also affirmatively authorized by Rule 4(f)(3), which requires that the mailing

procedure have been specifically directed by the district court. Service by international mail is not otherwise affirmatively authorized by Rule 4(f). Plaintiffs neither followed the procedure prescribed in Rule 4(f)(2)(C)(ii) nor sought the approval of the district court under Rule 4(f)(3). They simply dropped the complaint and summons in a mailbox in Los Angeles, to be delivered by ordinary, international first class mail. There is no affirmative authorization for such service in Rule 4(f). The attempted service was therefore ineffective, and the default judgment against Marquis cannot stand.

REVERSED and REMANDED, with instructions to VACATE the judgment.