[938 NYS2d 654]

New York State Thruway Authority, Appellant, v Nathan C. Fenech et al., Respondents, and Graham Corporation, Appellant. (And a Third-Party Action.)

Third Department, February 16, 2012

## APPEARANCES OF COUNSEL

*Eric T. Schneiderman, Attorney General,* Albany (*Andrew B. Ayers* of counsel), for New York State Thruway Authority, appellant.

*Napierski, Vandenburgh, Napierski & O'Connor, L.L.P.,* Albany (*Shawn T. Nash* of counsel), for Graham Corporation, appellant.

*Ropers, Majeski, Kohn & Bentley, P.C.,* New York City (*Anthony D. Grande* of counsel), for respondents.

## OPINION OF THE COURT

MERCURE, A.P.J.

After a tractor-trailer that allegedly exceeded the limitations of Vehicle and Traffic Law § 385 damaged the underside of a bridge in the Town of Batavia, Genesee County, plaintiff commenced this action against defendant Nathan C. Fenech, who was driving the truck, and defendant Silver Creek Transport, Ltd., which owned the truck (hereinafter collectively referred to as defendants), as well as defendant Graham Corporation, which owned the cargo of the truck. Defendants, who are Canadian, were served by mail pursuant to Vehicle and Traffic Law § 253.* Defendants moved to dismiss the complaint, contending that service by mail upon them was not permitted by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (20 UST 361, TIAS No. 6638 [1969]) (hereinafter the Hague Convention). Supreme Court granted the motion on that basis, noting that it was

---

* Plaintiff asserts that Silver Creek was served pursuant to Business Corporation Law § 307, but the affidavit of service recites that service was made pursuant to Vehicle and Traffic Law § 253.

bound to do so by virtue of this Court's decision in *Reynolds v Woosup Koh* (109 AD2d 97 [1985]) and cogently suggesting that *Reynolds* be revisited in light of subsequent developments in the law. Plaintiff and Graham, which cross-claimed against defendants, separately appeal.

We reverse. Both the United States and Canada are signatories to the Hague Convention, a multilateral treaty "intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad" (*Volkswagenwerk Aktiengesellschaft v Schlunk*, 486 US 694, 698 [1988]; *see Fernandez v Univan Leasing*, 15 AD3d 343, 344 [2005]). The treaty requires each signatory to establish a central authority that receives international service requests and thereafter serves documents "by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law" (*Volkswagenwerk Aktiengesellschaft v Schlunk*, 486 US at 699). Nothing in the Hague Convention, however, requires litigants to rely upon the central authority and a signatory "may consent to [additional] methods of service within its boundaries" (*id.*; *see Vazquez v Sund Emba AB*, 152 AD2d 389, 393 [1989]).

In that regard, article 10 (a) of the Hague Convention preserves a litigant's "freedom to *send* judicial documents, by postal channels, directly to persons abroad" in the absence of any objection by the destination state (emphasis added). While Canada has made clear that it "does not object to service by postal channels" (Accession, 1529 UNTS 499, 499 [1989]), some New York courts have determined that article 10 (a) does not authorize service by mail. This Court and the First Department have both adopted that interpretation, concluding that the use of the term "send" in article 10 (a)—as opposed to "service," which is ubiquitous elsewhere in the treaty—signifies "something other than 'service' in the legal sense, such as the mere transmittal of notices and legal documents which need not be 'served' " (*Reynolds v Woosup Koh*, 109 AD2d at 99; *see Sardanis v Sumitomo Corp.*, 279 AD2d 225, 229 [2001]). The Second and Fourth Departments have held to the contrary, pointing to the history and usage of the Hague Convention in determining that article 10 (a), while perhaps carelessly drafted, nevertheless allows service by mail (*see Fernandez v Univan Leasing*, 15 AD3d at 344; *Rissew v Yamaha Motor Co.*, 129 AD2d 94, 96-98 [1987]). A similar division has arisen among the federal circuit

courts of appeal that have addressed the scope of article 10 (a), with the Second Circuit adopting the latter view (*compare Brockmeyer v May*, 383 F3d 798, 801-802 [9th Cir 2004], *and Ackermann v Levine*, 788 F2d 830, 839-840 [2d Cir 1986], *with Nuovo Pignone, SpA v Storman Asia M/V*, 310 F3d 374, 384-385 [5th Cir 2002], *and Bankston v Toyota Motor Corp.*, 889 F2d 172, 173-174 [8th Cir 1989]).

Plaintiff now asks us to revisit our holding in *Reynolds* and, contrary to defendants' contention, this issue is properly before us. Moreover, the weight of authority—much of it having arisen after *Reynolds*—persuades us that a departure from our prior holding is appropriate.

The starting point in interpreting any treaty is its text and the context in which its words are used. Article 1 of the Hague Convention states that the treaty applies only "where there is occasion to transmit a judicial or extrajudicial document *for service* abroad" (Hague Convention, 20 UST at 362 [emphasis added]). Indeed, the explicit, limiting effect of article 1 was deliberate, addressing criticisms that language in the draft treaty "suggested that [it] could apply to transmissions abroad that do not culminate in service" (*Volkswagenwerk Aktiengesellschaft v Schlunk*, 486 US at 701). As such, article 10 facilitates the service of documents by permitting signatories to consent to alternate service methods, with article 10 (b) and (c) both referring to the freedom of specified individuals "to effect *service* of judicial documents." While article 10 (a), in contrast, refers to "the freedom to *send* judicial documents" (emphasis added), the express limitation of the Hague Convention's scope to the service of documents renders article 10 (a) meaningless if it is interpreted as applying only to documents that are sent, but not served, by mail.

To the extent that the language of article 10 (a) is ambiguous—in that reliance upon its obvious meaning would lead to "a result inconsistent with the" treaty's intent as expressed in article 1 (*Maximov v United States*, 373 US 49, 54 [1963]; *accord Sumitomo Shoji America, Inc. v Avagliano*, 457 US 176, 180 [1982])—we are required to "look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties" in order to ascertain the true meaning of article 10 (a) (*Choctaw Nation v United States*, 318 US 423, 432 [1943]; *see Eastern Airlines, Inc. v Floyd*, 499 US 530, 535 [1991]). A review of the history of the negotiations reveals that the treaty's drafters "intended the language [of

article 10 (a)] to include the service of process" (1 Ristau, International Judicial Assistance [Civil and Commercial] § 4-28, at 167 [1984]). Indeed, the official account of the conference that resulted in the Hague Convention stated that the first paragraph of article 10 "was intended to permit service by mail" (*Brockmeyer v May*, 383 F3d at 802), and the American delegation to the conference agreed that article 10 allowed "alternative channels for the transmission of the documents *for the purpose of service*" (Unification of the Rules of Private International Law: Report of the U.S. Delegation to the 10th Session of the Hague Conference on Private International Law, October 7-28, 1964, Dept St Bull, Feb. 22, 1965, at 269 [emphasis added]).

The drafters' view of article 10 (a) is reinforced by the subsequent actions of signatories to the Hague Convention, a majority of whom make "no objection to the service of judicial documents coming from abroad directly by mail in their territory" (Permanent Bureau of Hague Conference, Report on the Work of the Special Commission on the Operation of the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 17 ILM 312, 326 [1978]; *see* Table Reflecting Applicability of Articles 8 [2], 10 [a], [b] and [c], 15 [2] and 16 [3] of the Hague Service Convention, available at http://www.hcch.net/upload/applicability14e.pdf [accessed Dec. 13, 2011]). Moreover, special commissions convened to study the operation of the treaty have consistently noted that article 10 (a) preserves the right to serve process by mail, notwithstanding the holdings of "certain courts in the United States of America . . . that service of process abroad by mail was not permitted under the Convention" (Permanent Bureau of the Hague Conference on Private International Law, Report on the Work of the Special Commission of April 1989 on the Operation of the Hague Conventions of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters and of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, 28 ILM 1556, 1561 [1989]; *see* Permanent Bureau of the Hague Conference on Private International Law, Conclusions and Recommendations of the Special Commission on the Practical Operation of the Hague Apostille, Evidence and Service Conventions, at 11 [2003], available at http://www.hcch.net/upload/wop/lse_concl_e.pdf [accessed Dec. 13, 2011]). The United States Department of State holds

the same view, and its opinion, while not conclusive, "is entitled to great weight" (*Sumitomo Shoji America, Inc. v Avagliano*, 457 US at 184-185).

It is therefore now evident that article 10 (a) of the Hague Convention permits service of process by mail and, as such, plaintiff was free to serve defendants pursuant to Vehicle and Traffic Law § 253 (*see Fernandez v Univan Leasing*, 15 AD3d at 344-345; *see also Aranzullo v Collins Packing Co.*, 18 AD2d 1068 [1963], *affd* 14 NY2d 578 [1964]). Inasmuch as we further reject defendants' argument that the requirements of section 253 were not met, we conclude that Supreme Court acquired jurisdiction over them and their motion to dismiss must be denied.

Plaintiff's remaining arguments are rendered academic in light of the foregoing.

SPAIN, KAVANAGH, STEIN and EGAN JR., JJ., concur.

Ordered that the order is reversed, on the law, with costs to defendant Graham Corporation, and motion denied.